Filed 2/9/17  Certified for Partial Pub. 2/27/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DIANA LEMKE, | |
| Plaintiff and Appellant, | C078983 |
| v. | (Super. Ct. No. SCV0032702) |
| SUTTER ROSEVILLE MEDICAL CENTER et al., | |
| Defendants and Respondents. | |

In this appeal, Diana Lemke challenges the trial court's granting of summary judgment in favor of respondents Sutter Roseville Medical Center, Peter V. Hull, M.D., Debbie Madding, and Julie Fralick (collectively Sutter Roseville). Lemke was terminated from her employment as a registered nurse at Sutter Roseville after improper administration of narcotics to a patient and failure to properly monitor and document the patient's condition. In response, Lemke filed an action against Sutter Roseville in which she claimed retaliation for whistleblowing, disability discrimination, failure to

1

accommodate a disability, failure to engage in an interactive process, retaliation, harassment, failure to prevent retaliation, and defamation.

On appeal, Lemke addresses only her causes of action for retaliation, failure to prevent retaliation, and defamation. She contends (1) there is a triable issue of material fact as to whether Sutter Roseville's stated reasons for terminating her employment were pretextual, (2) the same reasons establishing her claim for retaliation also compel reversal of the trial court's dismissal of her claim for failure to prevent retaliation, (3) she presented sufficient evidence to demonstrate triable issues of material fact for her claim of defamation, and (4) the trial court erred in its evidentiary rulings related to the motion for summary judgment.

We conclude Lemke did not meet her burden to show Sutter Roseville's stated reasons were merely a pretext for retaliating against her. On this basis, we also determine the trial court properly dismissed her claim of failure to prevent retaliation. As to her cause of action for defamation, we conclude Sutter Roseville's statements were absolutely privileged because they were made in connection with its internal investigation and in an official proceeding before the California Board of Registered Nursing (Board). Finally, Lemke has forfeited her claim of evidentiary error for lack of any record citations or analysis of prejudice. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

We set forth the statement of factual and procedural history of the case consistent with Lemke's limitation of issues on appeal to her claims of retaliation, failure to prevent retaliation, and defamation.

### *Lemke's Operative Complaint*

Lemke's first amended complaint is the operative complaint. It alleges Sutter Roseville wrongfully terminated her from employment as a registered nurse. The operative complaint recounts that she began working at Sutter Roseville in 2011.

2

Between March 7, 2011, and April 23, 2011, Lemke "observed several safety issues" she reported to her supervisor, Debbie Madding, for corrective action. Madding, however, ignored the issues. During one of these incidents, Madding informed Lemke that "it [was] not the job of the relief nurse to write down what had been administered or happened while the charge nurse was on lunch break." Lemke regarded this directive as "unethical and illegal."

On April 23, 2011, an elderly patient was admitted to the Sutter Roseville emergency room with a possible hip fracture. Emergency room physician Peter V. Hull ordered that one milligram of Dilaudid (a narcotic approximately 8 to 10 times stronger than morphine) be given through a slow intravenous push to relieve the patient's pain. The patient continued to experience severe pain and Lemke asked Dr. Hull whether a pelvic fracture could be causing the extreme pain. Dr. Hull answered he would have to order more tests and began walking away. Lemke asked whether the patient should receive a new pain medication order, and Dr. Hull verbally ordered that the patient be given 100 micrograms of Fentanyl (a narcotic approximately 50 times stronger than morphine). Lemke researched Fentanyl, determined the ordered dosage was a "legitimate dosage for severe pain," and administered the drug.

Lemke informed the patient's family they should watch for signs of the patient's oxygen saturation levels dropping. As Lemke was proceeding to her next patient, the relief nurse directed her to take a lunch break. Lemke relayed her concerns regarding her patients and went to lunch. Upon returning to her station, Lemke was informed the patient had been placed on nasal cannula and had indeed suffered a fractured pelvis. At some point, Lemke observed the patient refuse a nasogastric tube at which point another nurse grabbed the patient's arms, got on top of him, and yelled to Madding to administer two milligrams of Ativan -- an order Lemke believes was illegal for a nurse to issue. Lemke apologized to the patient and left the room.

On the morning of April 24, 2011, Madding informed Lemke there was going to be a meeting involving "patient safety issues." On May 4, 2011, Lemke communicated with Sutter Roseville's human resources department about her patient safety concerns. During that conversation, Lemke noted she had already been informed by Madding that Lemke would need a union representative to accompany her to the meeting if Lemke wanted representation.

On May 6, 2011, a meeting occurred involving the human resources department, Lemke, her union representative, Madding, and Julie Fralick (manager of the registered nurse department). None of Lemke's patient safety concerns were addressed. Instead, Madding and Fralick presented their accusations against Lemke regarding the incident with the patient on April 23, 2011. They asked Lemke to resign. Lemke refused to resign. On May 9, 2011, Lemke's doctor placed her on disability leave. The next day, Sutter Roseville terminated her employment.

On February 1, 2012, Lemke was notified by the Board that an investigation was being conducted. The Board's complaint stated that "[t]he allegation involves [Lemke] and her license, which may be subject to disciplinary action." The investigator for the Department "identified the incident as one that happened in [April][1] of 2011, after which management counseled [Lemke]."

Lemke's cause of action for defamation asserts it applies to all defendants but does not describe any of the statements or identify any person hearing or learning of the statements. Instead, her operative complaint states only that Sutter Roseville's "managing agents and employees published false and defamatory statements concerning

---

[1] The Board's complaint expressly focused on the same patient care given by Lemke on April 23 to 24, 2011, as did Sutter Roseville's termination.

4

[Lemke's] profession, trade, business and qualifications." No further information regarding the defamatory statements is provided.

### *Sutter Roseville's Motion for Summary Judgment*

Sutter Roseville moved for summary judgment. Sutter Roseville acknowledged Lemke could demonstrate a prima facie claim of retaliation under the burden-shift test articulated in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668] (*McDonnell Douglas*). Conceding the burden shifted to it to show a legitimate reason for the termination, Sutter Roseville asserted Lemke's dereliction of care in multiple respects that cumulated in the near death of the patient constituted a sufficient showing. Based on this ground, Sutter Roseville argued Lemke had no claim for retaliation or failure to prevent retaliation. As to defamation, Sutter Roseville argued statements regarding Lemke's performance were privileged because they were made only in connection with its own internal investigation or to the Board.

### *Lemke's Opposition to the Motion for Summary Judgment*

Lemke opposed the motion for summary judgment. As relevant to this appeal, Lemke argued there was a triable issue of fact as to retaliation due to Sutter Roseville's termination shortly after she reported patient safety concerns. Lemke argued Sutter Roseville's investigation was inadequate to support the termination. Lemke also introduced a declaration from another registered nurse, Dorajane Apuna-Grummer. Apuna-Grummer opined Sutter Roseville's sanction was unusually harsh. As to defamation, Lemke argued Madding's inadequate investigation led to a false and disparaging report made to the Board. Thus, Lemke asserted Sutter Roseville had not established it had made the communications to the Board in good faith. Lemke's argument regarding defamation focused only on statements made to the Board.

5

***The Trial Court Granted Summary Judgment in Favor of Sutter Roseville***

The trial court granted summary judgment in favor of Sutter Roseville. As to the causes of action for retaliation and failure to prevent retaliation, the trial court explained that "there exists no triable issue establishing a causal link between her alleged engagement in protected activity and her termination. There is essentially no dispute that [Lemke's] termination was based upon the near fatal incident involving patient C.D. Without a causal link, there exists no triable issue" as to the causes of action for retaliation and failure to prevent retaliation.

The trial court dismissed the defamation claim on two grounds: "First, plaintiff provides no supporting evidence to sufficiently establish any disparaging statements were made to the [Board]. Even if such evidence was presented, which it has not been, such statements would fall under Civil [Code section 47, subdivision] (b)(4) as an official proceeding authorized by law."

In its ruling on the motion for summary judgment, the trial court sustained one of Lemke's evidentiary objections and three of Sutter Roseville's objections.

From the subsequent judgment of dismissal, Lemke timely filed a notice of appeal.

DISCUSSION

I

***Standard of Review***

Code of Civil Procedure section 437c, subdivision (c), provides for the granting of a motion for summary judgment when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Consequently, our review focuses on determining whether the defendants have met their burden of showing that "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to

6

present evidence showing a triable issue of fact. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists if the evidence and its reasonable inferences would allow a reasonable juror to resolve the factual contention in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 856.)

We review an order granting summary judgment under the de novo standard of review, considering "all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her [or his] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

## II

### *Retaliation and Failure to Prevent Retaliation*

Lemke contends the trial court erred in concluding she had not established any triable issue of fact regarding her claims for retaliation or failure to prevent retaliation. In her view, the timing of Sutter Roseville's termination shortly after she raised concerns about patient safety sufficed to allow a reasonable juror to conclude the adverse employment action constituted retaliation. In support, Lemke relies on the declaration of her expert nurse that indicated Sutter Roseville deviated from its usual practice in terminating Lemke for documentation errors. We are not persuaded.

### A.

### *The Burden-shifting Analysis Applicable to Retaliation Claims*

The Health and Safety Code provides whistleblower protections where it states that "[n]o health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health

7

facility because that person has . . . [¶] Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity." (Health & Saf. Code, § 1278.5, subd. (b)(1)(A).)

In *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042, the California Supreme Court explained a retaliation claim is analyzed under the burden-shifting test originally articulated in *McDonnell Douglas, supra,* 411 U.S. 792. Under this test, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.) If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation. (*Ibid.*)" (*Yanowitz,* at p. 1042.)

When the employer has demonstrated a legitimate reason for an adverse employment action, "an employee seeking to avoid summary judgment cannot simply rest on the prima facie showing, but must adduce *substantial additional evidence* from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual." (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1113, italics added.)

**B.**

***Lemke's Evidence of Unlawful Retaliation***

For purposes of summary judgment, Sutter Roseville conceded Lemke had made a prima facie showing on grounds of the rebuttable presumption of retaliation applying to

an adverse employment action within 120 days of an employee filing a complaint. In opposing summary judgment, Lemke acknowledged that "[i]f Defendants adduce evidence of a legitimate reason for the adverse action, the presumption is extinguished and the burden shifts back to Plaintiff to provide proffered reasons are pretextual." To meet her burden, Lemke reiterated her focus on the timing of her termination and argued Sutter Roseville's departure from its usual procedures provided additional evidence of pretext. Lemke asserted pretext was further established by Madding's lack of adequate investigation and failure to follow up on Lemke's side of the story.

The trial court rejected Lemke's arguments by finding "essentially no dispute" her termination was based on the near fatal incident involving the patient to whom Lemke administered Dilaudid and Fentanyl. The trial court did not specifically address whether the evidence of timing upon which Lemke relied to establish her prima facie case of retaliation could be used again after the burden had shifted back to her. The trial court also did not discuss Lemke's assertion Sutter Roseville had departed from its usual procedures in terminating her. However, the trial court's incomplete reasoning is not dispositive because an order granting summary judgment must be upheld if correct on any legal grounds. "We do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co*. (1997) 59 Cal.App.4th 6, 15–16.)

On appeal, Lemke reiterates her arguments made in the trial court that she can show retaliation based on the timing of her termination after raising patient safety concerns, Sutter Roseville's departure from its usual practices, and Madding's failure to conduct a proper investigation. We are not persuaded.

Lemke's reliance on the timing of her termination did establish a prima facie showing of retaliation. However, mere timing alone does not suffice to also carry her

9

burden of showing pretext after Sutter Roseville showed legitimate reasons for termination due to her failure to properly document the patient's medications and condition, to monitor the patient's condition, or to assist in reviving the patient after his oxygen desaturated. These errors cumulated in a near death experience for her patient.

After Sutter Roseville established a legitimate basis for the termination, Lemke could not meet her burden of showing pretext solely by recycling the presumption arising out of the timing of the adverse employment action. She needed to supply substantial additional evidence. Dispensing with the requirement of substantial additional evidence "would eviscerate the *McDonnell Douglas* framework for resolving claims at the demurrer or summary judgment stage, because the same minimal showing required of the plaintiff to raise a prima facie case would also suffice to preclude the employer from obtaining summary judgment notwithstanding otherwise unrebutted proof of articulated legitimate reasons for the employment termination." (*Loggins, supra,* 151 Cal.App.4th at pp. 1112–1113.) As in *Loggins*, Lemke's "evidence of a temporal proximity 'only satisfies the plaintiff's *initial* burden.' " (*Id.* at p. 1112, italics added.)

Lemke also relies on the declaration of Apuna-Grummer, who opined that "[i]t is excessive to terminate a person for lack of documentation and even more excessive to report her to the [Board] to try to have her license to practice nursing removed." Apuna-Grummer noted documentation violations are common and Lemke's patient ultimately "suffered no harm." On this basis, Lemke argued the poor documentation reflected a pervasive practice for which termination represented a stark departure from Sutter Roseville's usual procedures. Thus, she contends the deviation from usual procedures establishes pretextual termination. We disagree.

Lemke was terminated from her employment as a registered nurse at Sutter Roseville after improper administration of narcotics to a patient and failure to properly monitor and document the patient's condition. Specifically, Sutter Roseville informed

10

Lemke she was being terminated because "a patient in your care experienced a temporary apnic event as a result of your giving 100 mcg of Fentanyl in one dose without placing the patient on oxygen or properly monitoring the patient afterward." Sutter Roseville further stated Lemke compounded the error when Lemke "noticed [nurse Keri Sippel] in your patient's room while she was placing your patient on high flow oxygen and performing a sterna rub to the patient's chest in an attempt to arouse the patient you simply walked to the nursing station to document in the patient's chart instead of assisting with your patient's emergency care." Although Lemke made entries into the patient's chart, she twice failed to document "any vital signs or any further nursing interventions or patient assessment."

Poor documentation was only one of several errors committed by Lemke that led to her employment termination. Apuna-Grummer's reliance on poor documentation to establish an unduly harsh employment action did not address the other serious problems listed in Sutter Roseville's notice of termination to Lemke; improper administration of narcotics to a patient and failure to properly monitor the patient's condition. Thus, as to these other reasons given by Sutter Roseville for termination, the expert nurse's declaration did not create a triable issue of fact.

We also reject Lemke's claim that Madding's failure to conduct a proper investigation provided evidence of pretext. Apuna-Grummer faulted Sutter Roseville's investigation for failure to interview the patient's family, other nurses, or staff. However, Apuna-Grummer's declaration did not acknowledge or negate that Madding did conduct an investigation before Lemke's termination. It is undisputed Madding (1) reviewed the patient's chart, (2) interviewed Sippel, the nurse who revived the patient and made the report against Lemke, and (3) conducted a meeting with Lemke. During the meeting, Madding described the report received from Sippel and the allegations that were

11

investigated. Lemke was given the opportunity to explain what happened with the patient's care.

During the meeting, Madding made notes and followed up on the issues raised by Lemke. In response to Lemke's assertion she had several critical care patients, Madding tabulated Lemke had "11 discharged patients, 1 other ICU patient (admitted by . . . Sippel), 2 med/surg admits, 2 tele admits, and one peds admit over your 12 hour shift." Contrary to Lemke's assertion the patient at issue was "in a CT scan for a long time," Madding consulted the patient's record for a chronology before determining she "could not find any proof" the patient was absent for such a long time it would prevent proper documentation by Lemke. In response to Lemke's assertion she had asked the patient's family to watch him, Madding noted, "[i]t is not appropriate for patient's family members to be responsible for monitoring their family member's care in the Emergency Department." Responding to Lemke's assertion she was on a lunch break at the time of the apnic event, Madding consulted the time cards and determined the violations occurred before Lemke's lunch break. And Madding spoke with Dr. Hull who recalled informing Lemke to "push the medication in small increments" and he was not informed of the oxygen desaturation even though he would have expected notification after such an event. Based on Madding's further investigation, she reiterated her conclusion Lemke "exhibited substandard performance and gross negligence against a patient in your care by not following policies and procedures put in place to protect patient safety including failure to monitor your patient which nearly resulted in a sentinel event."

Lemke does not dispute Madding undertook a follow-up investigation after the meeting. Lemke, however, takes issue with Madding's finding Lemke was not at lunch when the patient's oxygen desaturated. The question of whether Lemke was at lunch or not does not create a triable issue of fact because Sutter Roseville's articulation of additional reasons for her termination established legitimate grounds for termination.

12

The possibility Lemke was at lunch during the patient's oxygen desaturation does not constitute substantial additional evidence of pretext.

In reaching our conclusion Lemke did not establish a triable issue of fact regarding her claim of retaliation, we do not rely on the revocation of Lemke's nursing license by the Board. Sutter Roseville emphasizes the sanction as demonstrating the seriousness of Lemke's errors, while Lemke strenuously opposes any consideration of the Board's action against her. The Board's proceedings began after Sutter Roseville terminated Lemke, and therefore the Board's sanction played no part in Sutter Roseville's decision. Accordingly, we do not need to resolve the extent to which the Board's sanction proves the legitimacy of Sutter Roseville's termination. The reasons stated in Sutter Roseville's notice of termination were sufficient to show legitimate reasons for the adverse employment action and shifted the burden to Lemke to establish pretext with substantial additional evidence. Lemke did not meet her burden.

## C.

### *Failure to Prevent Retaliation*

Our determination that summary judgment was appropriate as to Lemke's retaliation claim also compels the conclusion the trial court properly dismissed her cause of action for failure to prevent retaliation. In a case involving a claim for failure to prevent discrimination where no discrimination actually occurred in the workplace, the Fourth District held that "[e]mployers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented." (*Trujillo v. North County Transit Dist*. (1998) 63 Cal.App.4th 280, 288-289.) The same reasoning applies here. The lack of a viable claim for retaliation required dismissal of Lemke's cause of action for failure to prevent retaliation.

13

# III

## *Defamation*

Lemke contends the trial court erred in dismissing her cause of action for defamation because she produced evidence showing Sutter Roseville's statements to the Board were false and based on inadequate investigation.  We conclude Sutter Roseville's statements were absolutely privileged because they were made in connection with its internal investigation and in an official proceeding before the Board.

## A.

### *Absolute Privilege under Civil Code Section 47, Subdivision (b)*

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720, quoting 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782.)  Civil Code section 47 provides an absolute privilege for statements made in an official proceeding.  To this end, subdivision (b) of Civil Code section 47 provides in pertinent part that "[a] privileged publication or broadcast is one made" in any legislative or judicial proceeding as well as "in any other official proceeding authorized by law . . . ."  The California Supreme Court has explained that "[s]ection 47 establishes a privilege that bars liability in tort for the making of certain statements.  Pursuant to section 47(b), the privilege bars a civil action for damages for communications made '[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate],' with certain statutory exceptions that do not apply to the present case.  The privilege established by this subdivision often is referred to as an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*).)

14

The absolute privilege under Civil Code section 47, subdivision (b), encompasses communications made to instigate an official investigation and in connection with the investigation once commenced. (*Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1547.) The absolute privilege bars an action for defamation based on a report of misconduct to "an appropriate regulatory agency, even if the report is made in bad faith." (*Id.* at p. 1546.) For purposes of the absolute privilege supplied by subdivision (b) of Civil Code section 47, the Board is an appropriate regulatory agency. The Board is charged with responsibility to discipline the registered nurses it licenses. (Bus. & Prof. Code, §§ 2701, 2732.1, 2750.) In creating the Board, the Legislature declared: "Protection of the public shall be the highest priority for the [Board] in exercising its licensing, regulatory, and disciplinary functions." (Bus. & Prof. Code, § 2708.1.) Consequently, an absolute privilege applies to statements made by Sutter Roseville to the Board.

## B.

### *Sutter Roseville's Communications to the Board*

Lemke argues that "there is sufficient evidence to demonstrate an issue of fact whether Sutter [Roseville's] statements to the [Board] were made in good faith." We reject the argument. Statements made to the Board to report nursing misconduct are absolutely privileged under Civil Code section 47, subdivision (b). Thus, Lemke's defamation claim is barred even if she could prove Sutter Roseville's statements were not made in good faith or based on inadequate investigation. (*Hagberg, supra,* 32 Cal.4th at p. 360.)[2]

---

[2] Our conclusion obviates the need to consider whether Lemke's operative complaint adequately stated a claim based on communications to the Board when the complaint does not describe any of the allegedly defamatory statements or the recipients of those statements. A party cannot successfully resist summary judgment on a theory

15

## IV

### *Evidentiary Rulings*

Lemke argues the trial court erred in making its evidentiary rulings in connection with the motion for summary judgment. In so arguing, Lemke does not include a single citation to the appellate record in her opening or reply brief. For lack of citation to the record, we deem her argument to be forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [failure to cite to the record waives the claim of error].)

The argument is also forfeited for lack of any analysis in her opening brief as to how the alleged evidentiary errors were prejudicial. An appellant has the burden to "demonstrate how any claim of error in the trial court's exclusion of evidence would have made any difference in the outcome." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282.) Although Lemke's reply brief purports to demonstrate prejudice, an argument may not be raised for the first time in a reply. (*Nordstrom Com'n Cases* (2010) 186 Cal.App.4th 576, 583.) Even if cognizable in her reply brief, her assertion of prejudice does no more than claim the trial court erroneously sustained objections to portions of Apuna-Grummer's declaration. However, as we explained in part I, above, Apuna-Grummer's declaration did not address several of the errors committed by Lemke that resulted in her employment termination. Thus, it does not appear the admission of Apuna-Grummer's declaration in its entirety would have made a difference in the outcome.

---

not pleaded. (*County of Santa Clara v. Atlantic Richfield Co*. (2006) 137 Cal.App.4th 292, 332-333; *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 541.)

## DISPOSITION

The judgment is affirmed.  Respondents Sutter Roseville Medical Center, Peter V. Hull, M.D., Debbie Madding, and Julie Fralick shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                                                                         /s/
                                                            HOCH, J.

We concur:

                /s/
BUTZ, Acting P. J.

                /s/
RENNER, J.

CERTIFIED <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>**\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DIANA LEMKE, | |
| Plaintiff and Appellant, | C078983 |
| v. | (Super. Ct. No. SCV0032702) |
| SUTTER ROSEVILLE MEDICAL CENTER et al., | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Placer County, Michael A. Jacques, Judge. Affirmed.

BOHM LAW GROUP, Lawrance A. Bohm and Maria E. Minney for Plaintiff and Appellant.

HANSON BRIDGETT LLP, Jahmal T. Davis and Adam W. Hofmann for Defendants and Respondents.

BY THE COURT:

The opinion in the above-entitled matter filed on February 9, 2017, was

not certified for publication in the Official Reports. For good cause it now

---

**\*** Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of the discussion.

1

appears part III of the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.


_____/s/_____
BUTZ, Acting P. J.


_____/s/_____
HOCH, J.


_____/s/_____
RENNER, J.