[No. D048404. Fourth Dist., Div. One. May 14, 2007.]

DIANNE M. LOGGINS, Plaintiff and Appellant, v.
KAISER PERMANENTE INTERNATIONAL et al., Defendants and
Respondents.

COUNSEL

Joel C. Golden for Plaintiff and Appellant.

Thelen, Reid, Brown, Raysman & Steiner, Deborah J. Broyles and Ellen M. Papadakis for Defendants and Respondents.

OPINION

McDONALD, J.—Plaintiff Dianne M. Loggins filed this action against her former employer, defendants Kaiser Permanente International, Kaiser Foundation Health Plan, Inc., and Southern California Permanente Medical Group (collectively Kaiser), alleging her employment was terminated in retaliation for her complaint that her supervisor had discriminated against her because of her race. Kaiser contended Loggins's employment was terminated because Kaiser's investigation confirmed Loggins had devoted excessive work time and work resources to furthering her outside personal business, in violation of Kaiser's policies.

Kaiser moved for and obtained summary judgment on Loggins's causes of action for retaliatory employment termination in violation of Government Code section 12940, subdivision (h), and wrongful employment termination in violation of public policy.[1] Loggins argues she raised triable issues of fact on those claims and therefore summary judgment was error.

---

[1] Kaiser also sought and obtained judgment in its favor on Loggins's other causes of action, but Loggins does not appeal those rulings.

## I

## FACTS

### A. *The Employment History*

Loggins, an African-American, was employed by Kaiser for 24 years. During her tenure, she made numerous complaints that Kaiser had subjected her to harassment and discrimination because of her race. These complaints apparently had no adverse effect on her promotions and pay increases.[2] Her penultimate complaint, filed with the DFEH in January 2003, asserted she was denied equal pay bonuses. Three months later, with this 2003 charge pending, Loggins received the highest performance rating she had received in three years, and received a 4 percent pay increase.

### B. *The Suspension*

On August 8, 2003, Kaiser received an anonymous telephone call to the Kaiser Permanente Corporate Compliance hotline (KPCC) concerning Loggins. The caller reported that, since 2002, Loggins had been using Kaiser's office facilities, materials and resources for work related to Loggins's privately owned boarding home business, the Kellogg's Care & Group Home (Kellogg's). A preliminary review of Loggins's computer records disclosed several Kellogg's-related documents, and Ms. Sampson (the human resources leader for the San Diego Service Area) concluded the complaint warranted further investigation. On August 18, 2003, Sampson informed Loggins that, pending further investigation, she would be placed on administrative leave commencing August 19.

Loggins claimed that on August 11, one week before she was informed of her suspension, she telephoned KPCC's hotline, identified herself as Dianne

---

[2] For example, in early 1990 Loggins filed an Equal Employment Opportunity Commission (EEOC) charge alleging racial discrimination and, by the end of 1990, her salary had been increased nearly 10 percent. In April 1991, she filed a second EEOC charge alleging her supervisor, Ms. Murnane, had retaliated against her for filing the 1990 charge. Loggins later received a 7 percent pay increase in connection with her performance review for 1991. In late 1992 Loggins again filed a charge, this time with the Department of Fair Employment and Housing (DFEH), alleging Murnane had caused Loggins to receive unequal pay based on Loggins's race. Loggins subsequently received another pay raise. In 1998, Loggins complained to the human resources director that her performance review contained criticisms that had racial overtones, but within two months Loggins's salary increased by almost 12 percent more than her 1997 salary. Loggins filed another EEOC complaint with Kaiser in late 2001, alleging failure to promote and singling out Murnane. Kaiser's investigation failed to substantiate Loggins's claim and, while Loggins's appeal was pending in 2002, Murnane recommended Loggins for a promotion with a 25 percent salary increase.

Loggins, and complained that Murnane was harassing and discriminating against her because of her race. However, Kaiser's business records contain no record of her August 11 complaint. Kaiser's normal business practice is to transcribe reports made to the KPCC hotline. The records for the KPCC hotline for August 11, 2003, contain one complaint received that day but it was not from Loggins.

## C. The Investigation and Termination

On September 2, 2003, Loggins met with two Kaiser representatives, Mr. James and Ms. Evans, to discuss the allegations.[3] During the initial meeting, Loggins acknowledged she was involved with Kellogg's but denied working on Kellogg's matters while at Kaiser. She stated she rarely used her computer while at Kaiser, and denied using Kaiser's e-mail service, fax machines, or copy machines for Kellogg's-related business, except on rare occasions. However, James subsequently examined documents found on Kaiser's printer and copy machines that related to Kellogg's business. Loggins's e-mail files and computer were also examined, and disclosed that a substantial portion of Loggins's computer was devoted to Kellogg's business.[4] Kaiser also learned (1) Loggins had, in writing, provided her Kaiser work number as her contact number for Kellogg's, (2) her time records showed she worked on Kellogg's business while being paid for working at Kaiser (including spending a week attending a licensing seminar for Kellogg's while being paid by Kaiser), and (3) at least one of Loggins's Kellogg's documents contained language substantially similar to an internal Kaiser policy.

Loggins's activities violated the policies of Kaiser to which she had agreed. Specifically, the "Electronic Asset Usage" policy permitted only "occasional and limited (i.e. incidental)" personal use of Kaiser's electronic assets, and only if that usage would not interfere with work performance. Moreover, the policy expressly prohibited employees from using the electronic equipment to conduct an outside business.

During a second meeting with James and Evans, Loggins admitted she created, worked on and saved personal and Kellogg's documents on Kaiser computers, had used Kaiser's copier to produce documents for her Kellogg's

---

[3] Mr. James was group leader, human resources compliance for Northern California, and Ms. Evans was a special investigator.

[4] The investigation revealed 86 percent of her hard drive, and 83 percent of her network drive, was devoted to personal documents. Her hard drive contained 250 Kellogg's-related documents, nine school-related documents, and 41 Kaiser-related documents. Her network drive contained 207 Kellogg's-related documents, 12 school-related documents, and 44 Kaiser-related documents.

business, and her conduct violated Kaiser's policies. However, Loggins protested that other employees had used Kaiser facilities and electronic assets to sell items on Kaiser's premises, including Girl Scout cookies, Little League candy, Avon products, purses, and Tupperware. James and Evans investigated these claims and determined the activities identified by Loggins were de minimus compared to Loggins's substantial use of Kaiser's resources to conduct her outside business.

James and Evans concluded, based on their investigation, that Loggins had engaged in an unacceptable use of Kaiser resources, and had knowingly accepted a salary from Kaiser for the significant amounts of time that she was engaged in personal business activities. They informed Ms. Valenzuela (practice leader for human resources compliance) of the results of their investigation, and Ms. Valenzuela, Ms. Sampson and Mr. James concluded Loggins's employment should be terminated for this misconduct. On November 10, 2003, they informed Loggins of her employment termination and the grounds for the termination. Murnane did not participate in the decision to terminate Loggins's employment.

## II

## PROCEDURAL BACKGROUND

Loggins filed her initial DFEH charges on November 10, 2003, alleging Kaiser had placed her on leave in retaliation for her January 2003 DFEH complaint alleging denial of equal pay bonuses. She filed additional DFEH complaints in January and April 2004, realleging her claims for retaliation and again identifying her January 2003 DFEH complaint as the predicate protected activity. Her purported telephone call of August 11, 2003, was not mentioned in her DFEH claims until May 11, 2004, when she amended her DFEH claim to assert Kaiser's adverse action was also in retaliation for the August 11, 2003 complaint. The DFEH issued Loggins a right to sue notice, and Loggins filed the present action one year later. Loggins's lawsuit, alleging her employment was terminated in retaliation for her August 11 complaint to the KPCC hotline and for filing her DFEH complaints, included causes of action for retaliatory employment termination in violation of Government Code section 12940, subdivision (h), and retaliatory employment termination in violation of public policy.

Kaiser moved for summary judgment, arguing it was appropriate on Loggins's retaliatory employment termination claims because (1) there was no triable issue of fact on whether Loggins engaged in protected conduct, and (2) there was no triable issue of fact on whether Kaiser's reasons for terminating Loggins's employment were retaliatory. Loggins opposed the

motion, asserting (1) her own testimony showed she engaged in protected conduct by filing her January 2003 DFEH claim and by her August 2003 complaint to the KPCC hotline, (2) her employment was subsequently terminated, and (3) the temporal proximity between her August 2003 complaint and the adverse employment action permitted an inference that Kaiser's decision to terminate Loggins's employment was causally linked to her protected conduct. Accordingly, Loggins argued she had presented facts raising a prima facie case of retaliation. She also argued that, even if Kaiser's showing sufficed to shift the burden to her to show that Kaiser's articulated reasons for her employment termination were pretextual, the temporal proximity between her complaint to the KPCC hotline and the adverse employment action raised triable issues of fact regarding pretext.

The trial court, after sustaining numerous objections to Loggins's evidence submitted in opposition to the summary judgment motion,[5] granted the motion for summary judgment. The court ruled that, under *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615 [262 Cal.Rptr. 842], the January 2003 DFEH claim was too remote in time to support her retaliation claims and therefore only her August 11, 2003, complaint to the KPCC hotline could potentially support her claim. However, there was no record confirming that complaint was made and, even had she made the complaint, the only competent evidence showed the investigative action that led to her employment termination began in response to an earlier complaint, thereby precluding any inference that the adverse action was in retaliation for the alleged August 11 complaint. Finally, the court concluded that, even ignoring these deficiencies in Loggins's effort to establish a prima facie case, Kaiser's evidence showed its actions were based on legitimate, nondiscriminatory considerations, which shifted the burden to Loggins to produce substantial responsive evidence to show Kaiser's articulated reasons for the employment termination were untrue and pretextual, and Loggins had not produced any evidence of pretext. Accordingly, the court granted the motion for summary adjudication on these claims.

## III

### APPLICABLE STANDARDS

 When a plaintiff alleges retaliatory employment termination either as a claim under the FEHA or as a claim for wrongful employment termination

---

[5] Kaiser correctly notes that, because Loggins has offered neither argument nor authority suggesting the trial court's evidentiary rulings were erroneous, she may not contest the evidentiary rulings. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].) Accordingly, we predicate our analysis of the summary judgment ruling on the evidence admitted in the trial court and disregard Loggins's references to evidence to which objections were sustained.

in violation of public policy, and the defendant seeks summary judgment, California follows the burden-shifting analysis of *McDonnell Douglas Corp. v Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817] to determine whether there are triable issues of fact for resolution by a jury. (Cf. *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202–203 [48 Cal.Rptr.2d 448].) In the first stage, the "plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 [32 Cal.Rptr.3d 436, 116 P.3d 1123].) If the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68 [105 Cal.Rptr.2d 652].) If the employer produces evidence showing a legitimate reason for the adverse employment action, "the presumption of retaliation ' " 'drops out of the picture,' " ' " (*Yanowitz, supra*, at p. 1042), and the burden shifts back to the employee to provide "substantial responsive evidence" that the employer's proffered reasons were untrue or pretextual (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735 [35 Cal.Rptr.2d 181]).

Our review of an order granting summary judgment is de novo, and we must consider all the evidence set forth in the moving and opposing papers except evidence to which objections were made and sustained. (*Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1037.) Because this case comes before us after the trial court granted a motion for summary judgment, we consider the evidence in the record before the trial court when it ruled on that motion. We liberally construe the evidence in support of the party opposing summary judgment (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]), and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under applicable legal standards. (Cf. *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

## IV

## ANALYSIS

### A. *The Prima Facie Showing*

The trial court first ruled that Loggins's evidence was insufficient to establish a prima facie showing of retaliation because there was no triable

issue on either the first element (e.g., whether she engaged in protected activity) or the third element (whether there was a causal link between the protected activity and the adverse employment action) necessary to make a prima facie showing. Loggins argues this aspect of the ruling was erroneous because (1) it was undisputed she engaged in protected activity by her January 2003, DFEH complaint and (2) her declaration raised a triable issue of fact whether she engaged in protected activity by her alleged August 11, 2003 hotline complaint. She further argues that, because the third element of a causal link can be inferred from the temporal proximity between the August 11, 2003, hotline complaint and Kaiser's action in placing Loggins on administrative leave on August 18, 2003 (see *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 478 [4 Cal.Rptr.2d 522]), the trial court erred by finding insufficient evidence of a prima facie case to withstand summary judgment.[6]

Although Loggins's alleged August 11 hotline complaint is uncorroborated by either Loggins's or Kaiser's records, and Kaiser would have multiple avenues for attacking the veracity of Loggins's testimony that she made the telephone call, we may not decide factual issues on summary judgment but may only identify the presence or absence of factual issues. (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1383 [37 Cal.Rptr.3d 113].) Loggins's averment raises a factual issue of whether she engaged in protected conduct that was temporally close to and preceding the adverse employment action, which sufficed to shift the burden to Kaiser under the *McDonnell Douglas* framework, and the trial court's contrary conclusion was erroneous.

### B. *The Nonretaliatory Basis for the Adverse Action*

The trial court alternatively concluded that, even were Loggins's prima facie showing conceded, Kaiser had met its burden under the *McDonnell Douglas* framework of showing its actions were based on legitimate, rather than retaliatory, reasons. The competent evidence showed (1) Kaiser received the complaint that triggered its investigation before Loggins's purported August 11 telephone call, (2) Kaiser conducted a preliminary review that

---

[6] Loggins also asserts the temporal proximity between her January DFEH complaint and the August adverse employment action permits an inference of a causal nexus between protected activity and the employer's action. Although our conclusion below renders unnecessary a definitive determination of whether a nine-month hiatus is sufficiently close in time to permit the inference of a causal nexus, we note the case law suggests the employer's action must follow " 'within a relatively short time' " (*Fisher v. San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 615), and Loggins cites no case holding that a nine-month hiatus between protected conduct qualifies as a "relatively short time," particularly when the protected conduct is first followed by "non-adverse" actions (here, a good performance rating and a pay raise) before a later adverse action occurs.

produced evidence corroborating the allegations before deciding Loggins should be placed on administrative leave pending a full investigation, (3) Kaiser interviewed 13 witnesses and reviewed Loggins's computer logs and time records to learn the extent to which the allegations were accurate. Moreover, Kaiser showed it twice interviewed Loggins to obtain explanations for the apparent misuse of Kaiser equipment and time and, in response, Loggins first denied any improper acts and, after being confronted with contrary evidence, asserted that her behavior was indistinguishable from other employees offering Girl Scout cookies for sale at work. The record contains sufficient evidence that Kaiser terminated Loggins's employment for legitimate, nonretaliatory reasons, which shifted the burden to Loggins to provide substantial responsive evidence from which a trier of fact could conclude Kaiser's articulated reasons for the employment termination were pretextual.

■ Loggins asserts that *California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004 [18 Cal.Rptr.3d 906], quoting dicta from *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215 [87 Cal.Rptr.2d 487], holds an employer does not satisfy its burden to articulate a nondiscriminatory reason for the termination unless the employer satisfies the additional affirmative burden of showing " 'the procedure by which the employee was terminated was "validly and fairly devised and administered to serve a legitimate business purpose." [Citation.]' [Citation.]" (*Gemini*, at p. 1022, quoting *Hanson*, at p. 224.) Loggins argues that, because there were issues of fact whether Kaiser "fairly administered" the procedure by which her conduct was investigated and her employment terminated, Kaiser did not satisfy its burden in the second step of the *McDonnell Douglas* framework. However, we disagree with *Gemini*'s suggestion that an employer who has asserted a facially valid and specific basis for the employment termination must *additionally* prove the objective fairness of the employment termination procedures as part of its burden.[7] *Gemini*'s (and *Hanson*'s) reference to this additional burden was derived from misreading language in *Martin v. Lockheed Missiles & Space Co., supra,* 29 Cal.App.4th 1718. *Martin*'s reference to an employer's "validly and fairly devised and administered" procedures was in the context of whether the *employee* had met her burden (in the third step of the *McDonnell Douglas* framework) to show pretext *after* the employer identified a facially valid basis for the termination.

---

[7] Requiring the employer to prove at the second stage of the analysis that the employment termination was objectively fair appears to be inconsistent with the recognition that an employer is not liable for an employment termination premised on an unwise or incorrect basis, but only if the employment termination was based on a prohibited reason. (See, e.g., *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 358 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) To require the employer to go beyond showing a legitimate reason, by requiring the employer to show the termination was "fair," would imply that an unfair but otherwise nondiscriminatory employment termination would be actionable. That is not the law. (*Ibid.*)

(*Martin*, at p. 1733.) Thus, the quoted language from *Martin*, while permitting an employee to show the employer unfairly administered its procedures as part of the employee's evidentiary presentation in support of the employee's claim of pretext, does not support the principle that an employer has an additional burden (as part of the second phase of the *McDonnell Douglas* framework) to prove the legitimacy of its termination procedures to negate a discrimination presumption.

We conclude Kaiser produced sufficient evidence showing a legitimate reason for Loggins's employment termination, thereby shifting to her the obligation to produce substantial responsive evidence from which a trier of fact could find Kaiser's articulated reason untrue and pretextual.

### C. *The Evidence of Pretext*

■ Loggins's only admissible evidence on the issue of pretext was that Kaiser's adverse employment action followed closely after her alleged telephone call to the hotline. She argues the temporal proximity sufficed to raise a triable issue of fact because a trier of fact could infer, based solely on the timing of the adverse employment action, that Kaiser's articulated reason was pretextual. However, the court in *McRae v. Department of Corrections and Rehabilitation* (2006) 142 Cal.App.4th 377 [48 Cal.Rptr.3d 313] recently concluded that, although a plaintiff can satisfy the *initial* burden under the *McDonnell Douglas* framework by producing evidence of "nothing more than . . . the proximity in time between the protected action and the allegedly retaliatory employment decision," such evidence of a temporal proximity "*only satisfies* the plaintiff's initial burden. 'Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation " ' "drops out of the picture," ' " and the burden shifts back to the employee to prove intentional retaliation. [Citation.]' [Citation.]" (*McRae*, at p. 388, italics added, quoting *Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1042.)

■ We agree with *McRae* that temporal proximity, although sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action, does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual. Loggins's contrary argument, if accepted, would eviscerate the *McDonnell Douglas* framework for resolving claims at the demurrer or summary judgment stage, because the same minimal showing required of the plaintiff to raise a prima facie case would also suffice to preclude the employer from

obtaining summary judgment notwithstanding otherwise unrebutted proof of articulated legitimate reasons for the employment termination. Instead, an employee seeking to avoid summary judgment cannot simply rest on the prima facie showing, but must adduce substantial additional evidence from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual. (Cf. *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004–1005 [67 Cal.Rptr.2d 483].)

Loggins asserts she raised a triable issue of fact on the issue of pretext because there was evidence other similarly situated employees who also engaged in extracurricular business activities at work did not suffer adverse employment action, and the jury could therefore infer the actual reason for her employment termination was her complaint rather than Kaiser's articulated reason. However, there was no evidence her coworkers devoted *substantial* time and resources to pursuing their own business during work hours,[8] and it was undisputed below that Kaiser investigated her allegations about coworkers' extracurricular business activities and found the activities were de minimus and insignificant compared to Loggins's substantial use of Kaiser's resources to conduct a personal business.

We conclude that, because Loggins did not submit substantial responsive evidence from which a trier of fact could have found Kaiser's articulated reason for terminating her employment was a pretextual smokescreen to obscure that the actual reason for terminating Loggins's employment was to retaliate for her alleged complaint to the KPCC hotline, the trial court correctly granted Kaiser's motion for summary judgment.

---

[8] Loggins appears to contend on appeal that the voluminous documents found on her computer do not support the conclusion that she was engaged in *substantial* use of work time for Kellogg's business, because her declaration averred that in 2002 she created the documents outside of work, loaded them onto discs and brought them to work, and took less than one minute of work time to upload the documents onto her Kaiser computer. However, there is no evidence Loggins made this claim to Kaiser's investigators, and the investigative report shows Loggins conceded (during the second interview) that she used Kaiser computers to create Kellogg's documents because Loggins "liked [to use her] computer at Kaiser Permanente because it was better." Moreover, Loggins's claimed single uploading of multiple Kellogg's files in 2002 leaves unexplained those Kellogg's documents found on her computer that showed a "created date" *after* 2002. Finally, the other examples of the substantial time and resources spent by Loggins on Kellogg's business (e.g., the week spent at a seminar for Kellogg's licensing; listing Loggins's Kaiser telephone number as the exclusive contact number for her Kellogg's business; using Kaiser's e-mail system to conduct Kellogg's business; using Kaiser's copy machines to generate documents to benefit Kellogg's marketing) were essentially unrebutted by competent evidence.

## DISPOSITION

The judgment is affirmed. Kaiser is entitled to costs on appeal.

Huffman, Acting P. J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 8, 2007, S153594. Werdegar, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.