**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 25 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TAMAR KASBARIAN, | No.   16-56798 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-01795-MWF-JC |
| v. | |
| EQUINOX HOLDINGS, INC.; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted June 4, 2018
Pasadena, California

Before:  FISHER and OWENS, Circuit Judges, and MOLLOY,[**] District Judge.

Tamar Kasbarian ("Kasbarian") appeals the district court's grant of

summary judgment on her claims for retaliation, breach of contract, defamation,

and intentional infliction of emotional distress against her former employer,

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

Equinox Holdings, Inc. ("Equinox"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (internal quotation marks, alteration, and citation omitted).

1.      The district court did not err when it dismissed defendants Equinox Fitness Marina Del Rey, Inc. and Equinox Fitness Sepulveda, Inc. as "sham defendants" to be ignored for the purposes of assessing diversity jurisdiction. *See Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016). Equinox specifically stated which entities it sought to have dismissed and explained that neither had been Kasbarian's employer during any relevant period. Kasbarian produced no evidence to the contrary.

2.      The district court correctly granted summary judgment as to Kasbarian's breach of contract claims because, assuming Kasbarian was terminated via constructive discharge, she was an at-will employee. Equinox's letter extending Kasbarian an offer of employment, the Equinox employee handbook, and the Equinox confidentiality and non-solicitation agreement all provided Kasbarian's

2

employment was "at will." *See Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003) ("Unless the parties contract otherwise, employment relationships in California are ordinarily 'at will,' meaning that an employer can discharge an employee for any reason." (citing Cal. Lab. Code § 2922)). While "disclaimer language in an employee handbook or policy manual does not necessarily mean an employee is employed at will . . . neither can such [] provision[s] be ignored in determining whether the parties' conduct was intended, and reasonably understood, to create binding limits on an employer's statutory right to terminate the relationship at will." *Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1103–04 (Cal. 2000). Though Kasbarian claims her highly accomplished, nearly five year tenure at Equinox created a cause requirement, that evidence does not create a dispute of material fact in light of the parties' express understanding that Kasbarian's employment was at will. *Id.* at 1100–02.

3.      The district court did not err when it granted summary judgment on Kasbarian's claim for intentional infliction of emotional distress ("IIED"). An IIED claim requires extreme or outrageous conduct by the defendant, meaning that conduct "exceeds all bounds of decency usually tolerated by a decent society, and is of a nature which is especially calculated to cause, and does cause, mental distress." *Fisher v. San Pedro Peninsula Hosp.*, 262 Cal. Rptr. 842, 857 (Ct. App. 1989). Although Kasbarian has adduced evidence that she was treated poorly—

suspended, transferred, and called names—no reasonable factfinder could conclude that conduct was extreme or outrageous. *See id.* ("Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

4.     Nor did the district court err by granting summary judgment as to Kasbarian's claim for defamation. To prevail on a claim of defamation, Kasbarian must prove "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007) (internal quotation marks omitted). "Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Summit Bank v. Rogers*, 142 Cal. Rptr. 3d 40, 59 (Ct. App. 2012). "To determine whether a statement implies a factual assertion, we examine the totality of the circumstances in which it was made." *Lieberman v. Fieger*, 338 F.3d 1076, 1079–80 (9th Cir. 2003) (internal quotation marks omitted). Viewed in the light most favorable to Kasbarian, the facts here would not allow a reasonable fact finder to determine the statements made about Kasbarian were false so as to support a claim for defamation.

5.     The district court erred, however, when it granted summary judgment on Kasbarian's retaliation claims. "When a plaintiff alleges retaliatory employment

4

termination . . . as a claim for wrongful employment termination in violation of public policy, and the defendant seeks summary judgment, California follows the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether there are triable issues of fact for resolution by a jury." *Loggins v. Kaiser Permanente Int'l*, 60 Cal. Rptr. 3d 45, 50–51 (Ct. App. 2007). So too where a plaintiff alleges retaliation in violation of California Labor Code § 1102.5(b). *See Taswell v. Regents of the Univ. of Cal.*, 232 Cal. Rptr. 3d 628, 645–46 (Ct. App. 2018) (applying, but not discussing, burden shifting test). At step one, the plaintiff must make a prima facie case by showing "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005). "If the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action." *Loggins*, 60 Cal. Rptr. 3d at 51. If the employer provides a legitimate reason for the adverse employment action, "the burden shifts back to the employee to provide substantial responsive evidence that the employer's proffered reasons were untrue or pretextual." *Id.* (internal quotation marks omitted).

Kasbarian has established a prima facie case of retaliation.  First, a jury could find Kasbarian engaged in protected activity when she informed Equinox about the potentially fraudulent membership charges.  She "ha[d] reasonable cause to believe that the information disclose[d] a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(b).  Kasbarian's concern about charging a guest's card for a membership the guest did not approve is sufficient without pointing to a particular statute or law.  *See Patten v. Grant Joint Union High Sch. Dist.*, 37 Cal. Rptr. 3d 113, 118 (Ct. App. 2005) (holding plaintiff engaged in protected activity when she reported activity she thought was illegal).

Second, a jury could find Kasbarian suffered an adverse employment action when Equinox reassigned her to the Marina Del Rey location.  That assignment "materially affect[ed] the terms, conditions, or privileges of employment." *Yanowitz*, 116 P.3d at 1137.  While the reduction in commissions was not unique to Kasbarian, as the West L.A. club systematically restructured its bonus system to correct for a payroll error, Kasbarian's forced reassignment moved her individually to a less prestigious club for a significantly lower hourly wage ($9.00 per hour instead of $19.23 per hour).  *See Patten*, 37 Cal. Rptr. 3d at 120–22 (holding that transfer of an administrator from one school to another, although considered a

6

"lateral transfer" by the school district, "raised a triable issue of material fact regarding adverse employment action").

Third, a jury could find a causal link between the adverse employment action and the protected activity. "For purposes of making a prima facie showing, the causal link element may be established by an inference derived from circumstantial evidence." *McRae v. Dep't of Corr. & Rehab.*, 48 Cal. Rptr. 3d 313, 321 (Ct. App. 2006). Accordingly, "[a] plaintiff can satisfy his or her initial burden under the test by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Id*. Both Jack Gannon, Regional Vice President, and Brian Hemedinger, a Regional Director, decided, after the investigation, to transfer Kasbarian. Kasbarian had, in turn, reported what she believed to be illegal activity at the West L.A. club to both Gannon and Hemedinger. Gannon and Hemedinger belittled and insulted Kasbarian in response. Gannon also asked Jim Burger to investigate the West L.A. club following a customer complaint, and partnered with Burger in that investigation. Finally, though the adverse employment action did not immediately follow Kasbarian's complaints to management, it is proximate enough in time for a jury to find a causal link.

Because Kasbarian has presented a prima facie case, the burden shifts to Equinox "to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action." *Loggins*, 60 Cal. Rptr. 3d at 51. Equinox has done so here, asserting it reassigned Kasbarian as part of an effort to "create a fresh culture" after its investigation. Therefore, "the burden shifts back to [Kasbarian] to provide substantial responsive evidence that [Equinox]'s proffered reasons were untrue or pretextual." *Id*. (internal quotation marks omitted).

Kasbarian's "burden is to prove, by competent evidence, that [Equinox]'s proffered justification is a mere pretext; i.e., that the presumptively valid reason for the employer's action was in fact a coverup." *McRae*, 48 Cal. Rptr. 3d at 321. The proof and argument she makes here is sufficient to submit the question to a jury. Kasbarian points to conflicting testimony from Burger and Gannon as to who initiated the investigation into the West L.A. club. Kasbarian also notes that Gannon and Hemedinger admitted she did not engage in any terminable conduct. But another membership advisor, who was also found not to have engaged in any terminable conduct, was allowed to stay at West L.A. As Kasbarian notes, allowing another membership advisor to stay cuts against Equinox's assertion that it wanted to create a "fresh culture" at the club. Finally, prior to her reassignment, Kasbarian had received exemplary reviews from management, and was rewarded with all-expense-paid trips to New York and Miami for four consecutive years.

8

*See Flait v. N. Am. Watch Corp.*, 4 Cal. Rptr. 2d 522, 530 (Ct. App. 1992) ("Pretext may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before termination."). Viewed in the light most favorable to Kasbarian, a reasonable fact finder could conclude that Equinox's reason for reassigning Kasbarian to the Marina Del Rey club was pretextual.

In granting summary judgment for Equinox, the district court did not address whether Kasbarian was constructively discharged. Because constructive discharge is a materially adverse employment action, *Steele v. Youthful Offender Parole Bd.*, 76 Cal. Rptr. 3d 632, 642 (Ct. App. 2008), it could pertain both to Kasbarian's California Labor Code § 1102.5(b) retaliation claim, as well as her § 1102.5(b) and § 923 claims for wrongful termination in violation of public policy. Accordingly, we reverse as to all three.

6. Because the district court erred by granting summary judgment on Kasbarian's retaliation claims, it also erred in denying her request for punitive damages. *See* Cal. Civ. Code § 3294(b).

Each party shall bear its own costs on appeal.

**The judgment is AFFIRMED as to Claims Three, Four, Five, Eight, and Nine. The judgment is REVERSED as to Claims One, Six, and Seven, and REMANDED for further proceedings consistent with the above.**

9