Filed 9/5/25  Olivas v. Amerit Fleet Solutions CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANCISCO OLIVAS, | |
| Plaintiff and Appellant, | G064590 |
| v. | (Super. Ct. No. 30-2022-01276928) |
| AMERIT FLEET SOLUTIONS, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Sandy N. Leal, Judge. Affirmed.

Wellman & Warren, Scott Wellman and Michael Bazyler for Plaintiff and Appellant.

Perkins Coie, Jacob Dean and Heather M. Sager for Defendant and Respondent.

1

Francisco Olivas sued his former employer, Amerit Fleet Solutions, Inc., for discrimination, retaliation, and related claims. Amerit successfully moved for summary judgment.

We affirm. We find no abuse of discretion in the trial court's evidentiary rulings excluding certain evidence submitted by Olivas. And after independently reviewing the record, we conclude that Amerit demonstrated it had legitimate, nondiscriminatory, nonretaliatory reasons for putting Olivas on a leave of absence and for later terminating his employment. Further, Olivas did not raise a triable issue concerning pretext.

FACTS

Amerit provides vehicle fleet maintenance and repair services for clients like AT&T and Amazon. In 2010, Olivas began working for Amerit as a fleet manager, where he supervised repair work on over 1,200 AT&T vehicles at garages throughout Southern California.

Amerit conducted company-wide layoffs in 2016, and several of Olivas's mechanics—including his son Jafet Olivas[1]—were let go as a result. Upset about his son's termination, Olivas sent an e-mail to management complaining that he (Olivas) was "not valued" and had "no support at any level," and that this made him feel "discriminated against" and like he received "disparate treatment."

In a subsequent meeting with Amerit's vice president of strategic operations, Olivas (then in his mid 60's) explained he was being treated differently because he is "'old and Latino.'" He was told the layoffs were

---

[1] Because Jafet shares his father's last name, we refer to him by his first name. We mean no disrespect.

necessary to save money. After that meeting, he did not hear anything further from human resources in response to his complaint.

According to Olivas, in the years that followed, he felt his colleagues excluded him from meetings and dinners, did not seek his input, gave him fewer resources and support than other fleet managers, and mocked his accent.

In November 2020, AT&T's asset protection group received a complaint that Olivas was diverting repairs that should have been performed by Amerit "'in-house'" to a repair shop owned by Olivas's family member. AT&T asked Amerit to immediately remove Olivas from the AT&T account pending its investigation of the potential conflict of interest. Amerit did so and placed Olivas on a paid administrative leave.

During its investigation, AT&T learned that between 2016 and 2020, Olivas had sent over $485,000 in repair work on AT&T vehicles to a company called Golden State Fleet Solutions, which Olivas's son Jafet owned and operated out of Olivas's house. After completing its investigation in January 2021, AT&T asked Amerit to permanently remove Olivas from AT&T's account based on the investigation's findings.

Meanwhile, Amerit's human resources personnel conducted their own investigation, independent of AT&T's. When interviewed, Olivas admitted that his son Jafet operated a fleet management business out of Olivas's home, that Olivas had sent AT&T work to Jafet's company, and that Olivas had never notified Amerit in writing about Jafet's involvement with the company. After further investigation, Amerit determined Olivas had sent nearly $500,000 in work to Jafet's company without disclosing that

relationship, and in doing so had violated the conflict of interest policy in Amerit's employee handbook.[2]

In January 2021, while Olivas was still on a paid leave of absence, Amerit's human resources representative called him to discuss the possibility of having him return to manage fleet services for a different Amerit client, Amazon. Olivas said he might be interested but ultimately wanted to return to the AT&T account.

According to human resources, they called Olivas in early March to offer him the Amazon position.[3] The following week, Olivas did two interviews for the Amazon account. However, he told both interviewers he would prefer to return to his AT&T role. These comments made the interviewers question whether Olivas was the right fit for the position.[4]

---

[2] Although Amerit rolled out several updated versions of its employee handbook during Olivas's employment, at all times its conflict of interest policy provided that "[e]mployees are expected to avoid situations that create an actual or potential conflict [of interest] between the employee's personal interests and [Amerit's] interests." Olivas admits receiving the handbook but denies violating the conflict of interest policy.

[3] Olivas maintains he never received an actual offer on the Amazon account.

[4] For example, after interviewing Olivas on March 8, one interviewer noted in a post-interview e-mail to human resources that he wanted to "pass on" Olivas, whom he described as eager to return to AT&T, "disgruntled and reluctant to be interviewing," and lacking "the passion I would expect from a candidate." The other interviewer similarly noted on March 9 that Olivas was not a "long ter[m] solution" for the role because he repeatedly referenced "wanting to go back to his AT[&]T position," which did not "encourage[ the manager] to invest the time and energy into training" him on Amazon. Even so, Amerit's human resources representative insists Amerit planned to honor the Amazon offer.

On March 10, just days after the interviews, Olivas's attorney sent a letter to Amerit advising that "Olivas recently informed me that [Amerit has] offered him reinstatement in a position different from what he has worked at for multiple decades and for which he is not properly trained." Counsel went on to demand that "Olivas be immediately reinstated to his previous position" and asserted that if Amerit failed to do so, Olivas would have no choice but to proceed with "asserting his rights and remedies."

Amerit understood this letter to be a rejection of any Amazon offer and inferred Olivas was no longer interested in exploring other opportunities with Amerit. Since AT&T had asked that Olivas be permanently removed from its account, and since returning him to the AT&T account was not an option, Amerit continued Olivas's paid leave of absence.

After that exchange, Olivas had no further direct communications with Amerit. According to Olivas, this was because he had been instructed not to contact any Amerit employees.

In September 2021, Olivas (through counsel) filed an administrative complaint with the Department of Fair Employment and Housing, which provided him a right-to-sue letter. The complaint, which was served on Amerit, alleged that Amerit and AT&T had discriminated and retaliated against Olivas because of his race and age, among other reasons.

On January 27, 2022, Amerit's human resources representative called Olivas twice, but he did not answer. Olivas was terminated the following day due to his "lack of communication."

Olivas sued both Amerit and AT&T. In his operative first amended complaint, he asserted causes of action for age and race discrimination, failure to prevent discrimination, retaliation, and wrongful termination in violation of public policy.

5

Amerit moved for summary judgment, asserting Olivas's claims were time-barred, he could not prove a prima facie case, and he was terminated for legitimate, nondiscriminatory, nonretaliatory reasons. Olivas opposed the motion and submitted declarations from himself, his son Jafet, and three other Amerit employees in support. In its reply, Amerit lodged 35 objections to segments of those declarations, asserting grounds including lack of personal knowledge or foundation.

The trial court granted summary judgment for Amerit. It began by sustaining (at least in part) 29 of Amerit's 35 evidentiary objections, though it did not specify on what grounds. It then found that a question of fact existed as to whether the matter involved a continuing violation, and thus rejected Amerit's argument that Olivas's claims are time-barred. On the merits, the court concluded Amerit showed a legitimate, nondiscriminatory, nonretaliatory reason for Olivas's termination—his lack of communication— and found Olivas failed to demonstrate pretext. The court then entered judgment for Amerit.

DISCUSSION

I.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY

EXCLUDING SEGMENTS OF OLIVAS'S SUPPORTING DECLARATIONS

We begin with the evidentiary rulings, which we review for abuse of discretion. (*Doe v. Software One, Inc.* (2022) 85 Cal.App.5th 98, 104.) We have reviewed the challenged declarations of Olivas, Jafet, and three other Amerit employees and discern no abuse of discretion in the trial court's evidentiary rulings.

To provide an illustrative example, many of Amerit's objections concerned statements by the declarants that "everyone" at the garage or "[a]ll

6

of the workers," drivers, or fleet managers at Amerit knew that Jafet was Olivas's son. Those statements lack foundation, and the declarations do not establish how the declarants would have personal knowledge about what dozens of other employees might know.

The same can be said of the statements by both Olivas and his colleague Miguel Ramirez regarding the relative qualifications of various Amerit employees who were or were not promoted, as well as statements about purported statistics on the race of Amerit fleet managers. Similarly, statements like Olivas's averment that "The pretextual nature of this is clear" could be properly excluded as argumentative. Excluding those and the other challenged statements did not exceed the bounds of reason. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

## II.

### SUMMARY JUDGMENT WAS APPROPRIATE

That brings us to the merits of Amerit's motion. "'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' . . . [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subd. (c).)

When a defendant employer moves for summary judgment on the grounds that it had nondiscriminatory reasons for terminating an employee, "''the employer satisfies its burden as moving party if it presents evidence of

7

such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination. [Citations.] To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination [or retaliation] occurred.""" (*Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 822 (*Wilkin*).)

Olivas spends much of his briefing attacking the reasoning behind the trial court's ruling. For example, he asserts the court focused on facts unrelated to lack of communication when evaluating whether Amerit established a legitimate nondiscriminatory reason for the termination, and it failed to discuss the evidence Olivas presented on pretext, such as the fact that Olivas could have been reached through his attorney. He further contends that the conflict of interest violation and the Amazon offer are "red herring[s]" because the stated reason for his termination was lack of communication, not the conflict of interest or rejection of the Amazon alternative. But we review only the ruling of the trial court, not its rationale, and we affirm summary judgment on any correct ground if the parties had an adequate opportunity to address it below. (*Nicoletti v. Kest* (2023) 97 Cal.App.5th 140, 144.)

Having considered the record de novo, we conclude Amerit satisfied its burden of showing it had legitimate, nondiscriminatory, nonretaliatory reasons for the adverse employment actions taken against Olivas. Amerit established Olivas was placed on a paid leave of absence because Amerit believed he sent his son's company nearly $500,000 worth of work that should have been performed by Amerit in-house in violation of

8

Amerit's conflict of interest policy.[5] After AT&T asked Amerit to permanently remove Olivas from its account, Amerit kept Olivas on that paid leave of absence because Olivas (through counsel) rejected any alternative position by insisting he be returned to the AT&T account. And after receiving no indication over the following 10 months that Olivas would be willing to return to Amerit in any capacity other than working for AT&T, Amerit terminated Olivas for lack of communication.

Since Amerit satisfied its initial burden of showing legitimate, nondiscriminatory, nonretaliatory reasons for Olivas's leave and termination, the burden shifted to Olivas to raise a triable issue that intentional discrimination or retaliation occurred. (*Wilkin, supra,* 71 Cal.App.5th at p. 823.)

"Proof of discriminatory intent often depends on inferences rather than direct evidence," and as a result, "'very little evidence of such intent is necessary to defeat summary judgment.'" (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 283.) Even so, the employee's evidence remains subject to careful scrutiny, must relate to the motivation of the decision makers, and must show an actual causal link between the prohibited motivation and the adverse employment action. (*Foroudi v. Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1007–1008 (*Foroudi*).) "[T]he 'stronger the

---

[5] It is immaterial whether the work actually should have been performed in-house or whether Olivas actually violated Amerit's conflict of interest policy. "'It is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case.'" (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 170; see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 358 ["if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct"].)

9

employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive.'" (*Id.* at p. 1008.)

In the face of Amerit's showing of a legitimate reason for the termination, Olivas "could avoid summary judgment only by offering 'substantial evidence' that [the employer's] reasons were untrue or pretextual, or that it acted with a discriminatory animus, or both, 'such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.'" (See *Foroudi*, *supra,* 57 Cal.App.5th at p. 1008.)

Olivas did not carry that burden. He presented evidence that he was mocked at Amerit for having an accent, given fewer resources, and excluded from meetings and dinners. But he drew no connection between the colleagues who treated him that way and the individuals who approved his leave of absence and termination.

In an attempt to show Amerit's reason for terminating him was fabricated, Olivas pointed to evidence that he was told not to contact anyone at Amerit during his leave, that Amerit could have contacted him through his attorney but did not, and that Amerit never had any issues contacting him before his leave. All valid points, but we do not view those facts in a vacuum. Both Olivas and his attorney repeatedly told Amerit in the first quarter of 2021 that Olivas only wanted to return to work if it was on the AT&T account, and their 10 months of silence after that did nothing to dispel that notion. Olivas's evidence is thus insufficient to create a triable issue as to whether Amerit's stated reason for his termination—lack of communication—was fabricated.

Olivas insists the real reason for his January 2022 termination was his September 2021 administrative complaint with the DFEH. Again, we

10

are not persuaded. The exhaustion of a claimant's administrative remedies (something that happens in every employment case), without more, is not enough to show pretext. (Accord, *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1112 [fact that adverse employment action occurred closely after employee complained to corporate compliance hotline was insufficient to create triable issue of fact whether employer's articulated reason was pretextual].)

Olivas alternatively contends summary judgment was improper because the trial court found a triable issue existed concerning the statute of limitations. At oral argument Olivas's counsel quoted the court's finding that Olivas "presented sufficient evidence to create a triable issue of fact that Amerit's failure to address his complaints in 2016, and the alleged subsequent retaliatory acts[,] were part of a continuing violation." He then asserted it was inconsistent for the court to make that finding while simultaneously concluding Olivas had not carried his burden on pretext.

We read the order differently. The court found a triable issue of fact in connection with the statute of limitations—specifically, as to whether "Amerit's failure to address [Olivas's] complaints in 2016, and the *alleged* subsequent retaliatory acts[,] were part of a continuing violation" "for purposes of extending the limitations period." (Italics added.) The court did not find Amerit actually retaliated against Olivas, as Olivas suggests, nor did it find a triable issue existed as to the substantive merits of Olivas's claims. Whether a triable issue exists as to the accrual date is irrelevant to whether

11

Olivas carried his burden to show pretext. Summary judgment was therefore appropriate.[6]

## DISPOSITION

The judgment is affirmed. Amerit shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


SCOTT, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.

---

[6] Olivas does not meaningfully address his claims for failure to prevent discrimination or wrongful termination. We therefore consider any arguments unique to those claims forfeited.