Filed 2/23/22  Ward v. Cal. Dept. of Corrections and Rehabilitation CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JAMES M. WARD, | |
| Plaintiff and Appellant, | E073567 |
| v. | (Super.Ct.No. BLC1600074) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David M. Chapman, Judge.  Affirmed.

Derek T. Anderson and Derek T. Anderson for Plaintiff and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Chris A. Knudsen, Assistant Attorney General,  Jodi L. Cleesattle and Jennifer L. Santa Maria, Deputy Attorneys General, for Defendant and Appellant.

1

# I.  INTRODUCTION

Plaintiff and appellant James M. Ward (plaintiff) was hired as the chief dentist for the Ironwood State Prison (ISP) in July 2007 for a two-year limited term.  In 2008, he applied for a permanent chief dentist position at ISP, but he was notified in February 2009 that he had not been selected for the position.  As a result, plaintiff filed a civil action against defendant and appellant California Department of Corrections and Rehabilitation (CDCR).

Ultimately, two causes of action for whistleblower retaliation in violation of Labor Code[1] sections 1102.5 and 6310 were tried before a jury, and plaintiff was awarded $1,994,109 in damages.  CDCR filed a notice of intent to move for judgment notwithstanding the verdict (JNOV) and for a new trial.  The trial court granted the motion for new trial on the ground of insufficiency of the evidence to support the verdict and excessive damages, but it denied the motion for JNOV.

Plaintiff appeals from the order granting a new trial, arguing (1) the trial court applied the wrong legal standard to evaluate the sufficiency of plaintiff's section 1102.5 claim; (2) the trial court abused its discretion in concluding there was insufficient evidence to support the jury's verdict; and (3) the trial court abused its discretion in granting a new trial based upon excessive damages.  CDCR appeals from the order denying its motion for JNOV, arguing the trial court did not go far enough in granting a new trial because the evidence compelled a verdict in its favor.

---

[1] Undesignated statutory references are to the Labor Code.

We find no error in the trial court's application of the law with respect to plaintiff's section 1102.5 claim. We further conclude that there is sufficient evidence in the record to support the jury's verdict, but also, sufficient evidence to support the contrary conclusions expressed by the trial court in granting a new trial. Thus, we affirm both the trial court's order denying the JNOV and the order granting a new trial. Finally, because we conclude the trial court's grant of a new trial may be affirmed on the ground of insufficiency of the evidence to support the verdict, we need not discuss the alternative grounds argued by the parties on appeal.

## II. FACTS AND PROCEDURAL HISTORY

A. *Background*

The CDCR entered into a settlement to resolve ongoing litigation with a class of inmates alleging inadequate dental care in violation of their rights under the Eighth Amendment to the United States Constitution. The settlement resulted in a court approved stipulation mandating the level of dental care that CDCR would provide to inmates housed in its correctional facilities, known as the "Perez mandates." Thereafter, CDCR hired numerous dental professionals throughout the state in order to bring its facilities and practices into compliance with the Perez mandates.

As part of this extensive hiring, plaintiff was hired to fill a limited-term position as the chief dentist at ISP. Toward the expiration of his term, plaintiff applied for the permanent chief dentist position at ISP but was not selected for the position. As a result, plaintiff filed a civil action against CDCR alleging various causes of action. Ultimately,

only claims for whistleblower retaliation in violation of sections 1102.5 and 6310 were tried before a jury.

B. *Relevant Evidence at Trial*[2]

At trial, it was undisputed that the individual at CDCR with the hiring authority to approve plaintiff's hiring packet, and who ultimately made the decision not to do so, was Dr. John Culton. Further, plaintiff testified that the only communications made to Dr. Culton that he claimed constituted protected disclosures under the whistleblower statutes occurred in a conversation on January 26, 2009, and in follow-up communications thereafter. The only two individuals who testified to the existence and nature of plaintiff's alleged whistleblowing disclosures were plaintiff and Dr. Culton.

1. Testimony of Plaintiff

Plaintiff testified that he is a licensed dentist, who was hired by CDCR in 2007 for a limited-term position as the chief dentist for a correctional facility. The position included responsibility for oversight of all dental employees and hiring authority for the dental department at ISP. It was his responsibility to ensure that his department complied with applicable rules and regulations, including implementation of the Perez mandates, which he understood to be a court order requiring inmates to receive a minimum level of care. In his role as chief dentist, he developed and implemented new policies in order to bring ISP into compliance with the Perez mandates. These new policies included the

---

[2] Because we affirm the trial court's order granting a new trial on the ground of insufficiency of the evidence to support the verdict, we summarize only the testimony necessary to resolve that issue on appeal.

introduction of an appointment system and a system for management of dental tools, the modification of staff scheduling, and the implementation of an on-call requirement for staff.

Plaintiff testified that he faced considerable resistance from staff as a result of his policies. He complained to his direct supervisors regarding his difficulties implementing policy changes, and they collaborated with him to address this staff resistance, including taking disciplinary action against staff members who resisted these new policies. Plaintiff acknowledged that several staff members had filed complaints against him with the Equal Employment Opportunity Commission (EEOC) but maintained that such complaints were motivated by staff resistance to the policy changes that he implemented.

At some point, plaintiff was notified of an opportunity to apply for a permanent position as the chief dentist at ISP. Plaintiff applied and was interviewed for the position. He was selected as a highly competitive candidate, and CDCR issued a hiring packet to the hiring authority for approval. However, before the packet was signed, the hiring authority retired, and Dr. Culton became the temporary hiring authority for ISP.

Plaintiff arranged to personally meet with Dr. Culton on January 26, 2009. Plaintiff testified that his meeting had a twofold purpose: (1) to make Dr. Culton aware of difficulties plaintiff had been experiencing in the dental department at ISP, and (2) to inquire regarding the status of plaintiff's hiring packet. Plaintiff discussed various personnel matters involving ongoing disciplinary action against staff, expressed the belief that staff complaints filed against him were false and motivated by resistance to the new

5

policies that he had implemented at ISP, and further expressed the belief that his policies were important to ensure ISP met the Perez mandates.

When plaintiff inquired about his hiring packet, Dr. Culton indicated he was not inclined to approve it. Dr. Culton told plaintiff that plaintiff's actions reporting matters related to the Perez mandates compliance made Dr. Culton look bad and requested that plaintiff first obtain permission from Dr. Culton before raising those issues outside the institution. Plaintiff believed Dr. Culton followed up with written communication, specifying that any concerns should be reported within plaintiff's chain of command. According to plaintiff, Dr. Culton expressly stated he would not hire plaintiff following this exchange and proffered that he would not do so as a result of the staff complaints against plaintiff.

Plaintiff received a formal letter dated February 3, 2009, notifying him that CDCR had not selected him for the permanent chief dentist position at ISP. He testified that following receipt of this letter, CDCR continued to advertise for the position.

On cross-examination, plaintiff stated that he also complained of health and safety concerns during his discussion with Dr. Culton. Specifically, plaintiff made comments about the lack of space for staff to take breaks and eat lunch, requiring them to do so in a room designated for sterilization. Plaintiff believed this constituted a violation of Occupational Safety and Health Administration guidelines. On redirect, plaintiff made no further mention of a health and safety complaint and, instead, agreed that all of his complaints to Dr. Culton involved patient access to care.

## 2. Testimony of Dr. Culton

Dr. Culton testified that he worked for CDCR as the chief medical officer of Chuckawalla Valley State Prison. However, at some point, he was also assigned to temporarily oversee ISP when its chief medical officer retired in December 2008. As part of this process, he would have received the hiring packet related to plaintiff's application for the permanent chief dentist position at ISP.

Dr. Culton testified that he would have remembered if an employee made a whistleblowing complaint directly to him and would have reported any such matters up the chain of command, but he did not recall any such complaints in his discussions with plaintiff.

Dr. Culton explained that he did not want to sign off on plaintiff's hiring packet because he did not participate in the interview or selection process and knew nothing about plaintiff. He further stated that when he reached out to individuals who had been involved in that process, they appeared unwilling to comment or otherwise unwilling to endorse plaintiff for the position. Finally, Dr. Culton stated that at the time of his meeting with plaintiff, he had already been made aware that CDCR was going to implement a hiring freeze as a result of budgetary constraints. Thus, he considered the permanent chief dentist position at ISP "essentially a nonfillable position."[3] He initially testified that he could not recall whether he requested the position be readvertised, but he

---

[3] Testimony by other witnesses confirmed that CDCR did in fact implement a hiring freeze impacting the chief dentist positions at all institutions in February 2009, shortly after plaintiff received his formal notice that CDCR had declined to hire him.

later denied ever instructing that the position be readvertised following the decision to not hire plaintiff.

C.  *Verdict and Post-trial Motions*

The jury returned a verdict in favor of plaintiff on both causes of action for violation of sections 1102.5 and 6310.  It awarded plaintiff a total of $1,994,109 in damages, and judgment was entered on April 24, 2019.  CDCR timely moved for JNOV and a new trial.  The trial court denied the motion for JNOV but granted the motion for a new trial on the ground of insufficiency of the evidence to support the verdict and excessive damages.

In its statement of reasons, the trial court concluded that the evidence was insufficient to show plaintiff engaged in protected activity under either section 1102.5 or 6310; the evidence was insufficient to establish a causal link between any alleged protected activity and the failure of CDCR to hire plaintiff for a permanent position; and that CDCR had proffered a legitimate, nonretaliatory reason for declining to hire plaintiff on a permanent basis.  The trial court also expressed the view that the damages were excessive in light of the fact that the evidence also showed the chief dentist position was formally eliminated for budgetary reasons only a year after plaintiff was not hired for the position.  Plaintiff appeals from the order granting a new trial, and CDCR appeals from the order denying its motion for JNOV.

## III. DISCUSSION

### A. *Legal Background*

Both of plaintiff's causes of action are retaliation claims based upon the Labor Code's whistleblower statutes. Section 1102.5, subdivision (b), is " 'California's general whistleblower statute' [citation], which provides: 'An employer may not retaliate against an employee for disclosing information . . . where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.' " (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468.) Similarly, "[s]ection 6310, subdivision (b), permits an action for damages if the employee is discharged, threatened with discharge, or discriminated against by his or her employer because of the employee's complaints about unsafe work conditions." (*Daly v. Exxon Corp.* (1997) 55 Cal.App.4th 39, 44.) However, each claim is subject to a different analytical framework.

Our Supreme Court has recently clarified that "[s]ection 1102.6 provides the governing framework for the presentation and evaluation of whistleblower retaliation claims brought under section 1102.5. First, it places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action. . . . Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in

9

protected activity." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718 (*Lawson*).)

In contrast, no parallel statute exists setting forth the respective parties' burdens for a whistleblower retaliation claim brought pursuant to section 6310, subdivision (b). Thus, this claim is analyzed under the traditional *McDonnell Douglas*[4] framework that applies generally to retaliation and whistleblower claims. (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1193 ["Like claims for discrimination, retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis."]; *Armin v. Riverside Community Hospital* (2016) 5 Cal.App.5th 810, 830 [applying *McDonnell Douglas* framework to whistleblower claim under Health & Saf. Code, § 1278.5 whistleblower protections]; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453 [applying *McDonnell Douglas* framework to whistleblower provisions in Gov. Code, § 12940, subd. (h)].)

"In the first stage [of the *McDonnell Douglas* framework], the 'plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.' " (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1109 (*Loggins*); see *Patten*, *supra*, 134 Cal.App.4th at p. 1384.) "If the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there

---

[4] *McDonnell Douglas Corp v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*).

10

was a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces evidence showing a legitimate reason for the adverse employment action, 'the presumption of retaliation " ' "drops out of the picture," ' " ' [citation], and the burden shifts back to the employee to provide 'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual." (*Loggins*, at p. 1109; see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354-355.)

Here, the trial court concluded that the evidence was insufficient to support necessary elements under each of these analytical frameworks. Thus, our review of the trial court's order denying CDCR's motion for JNOV and order granting a motion for new trial based upon insufficiency of the evidence is guided by this framework.

B. *The Trial Court Did Not Abuse Its Discretion in Granting a New Trial*

Here, plaintiff contends the trial court's order granting a new trial must be reversed because (1) the trial court applied the wrong legal standard to evaluate the sufficiency of his whistleblower claim under section 1102.5; (2) the trial court abused its discretion in concluding there was insufficient evidence to support the jury's verdict; and (3) the trial court abused its discretion in granting a new trial based upon excessive damages. We conclude the trial court applied the correct legal principles and further conclude the trial court did not abuse its discretion in granting a new trial based upon insufficiency of the evidence to support the verdict. Given this conclusion, it is unnecessary for us to consider the alternative ground of excessive damages or other arguments raised by the parties regarding other aspects of the trial court's statement of reasons.

11

1. <u>General Legal Principles and Standard of Review</u>

" 'The authority of a trial court in this state to grant a new trial is established and circumscribed by statute.  [Citation.]  [Code of Civil Procedure] [s]ection 657 sets out seven grounds for such a motion:  (1) "Irregularity in the proceedings"; (2) "Misconduct of the jury"; (3) "Accident or surprise"; (4) "Newly discovered evidence"; (5) "Excessive or inadequate damages"; (6) "Insufficiency of the evidence"; and (7) "Error in law." ' "
(*Jackson v. Park* (2021) 66 Cal.App.5th 1196, 1213 (*Jackson*).)

"We review the order granting a new trial for an abuse of discretion.  [Citation.] ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.  This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter.  So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside." ' "  (*Jackson*, *supra*, 66 Cal.App.5th at p. 1213.)

When a trial court grants a new trial on the ground of insufficiency of the evidence to support the verdict or excessive damages, the trial court " 'is not bound by a conflict in the evidence, and has not abused its discretion when there is any evidence which would support a judgment in favor of the moving party.  [Citations.]  . . .  "It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court." ' "  (*McFarland v. Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 707; see Code Civ. Proc., § 657.)  Thus,

the appellant bears the burden to demonstrate " 'that no reasonable finder of fact could have found for the movant on [the trial court's] theory,' " and "the trial court's factual determinations, reflected in its decision to grant the new trial, are entitled to the same deference that an appellate court would ordinarily accord a jury's factual determinations." (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412.)

2. <u>Section 1102.5 Does Not Require an Actual Violation of a Statute, Rule, or Regulation</u>

Initially, we address plaintiff's argument that the trial court applied an incorrect legal standard in evaluating the sufficiency of the evidence to support the jury's verdict as to his section 1102.5 claim. Plaintiff contends the trial court granted a new trial upon the mistaken belief that reporting a suspected violation of the Perez mandates could not constitute protected activity because the mandates do not constitute a state or federal statute, rule, or regulation. According to plaintiff, the Perez mandates are no different than statutes, rules, or regulations because they were approved by a federal court order and, as such "created rules with the force of federal law." In response, CDCR contends that, under a plain reading of section 1102.5, disclosures that involve anything other than suspected violations of state or federal statutes, rules, or regulations fall outside the scope of section 1102.5's protection. In our view, both of these arguments are misplaced and misconstrue the trial court's reasoning.

By its very terms, section 1102.5, subdivision (b), prohibits employer retaliation when an employee discloses information if the employee "has reasonable cause to believe" that the information discloses a violation of a statute, rule or regulation. Thus,

13

"[a]n employee engages in protected activity when she discloses . . . ' "reasonably based suspicions" of illegal activity." ' " (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138.)  A disclosure is protected as long as the employee reasonably believes a violation has occurred, regardless of whether the employee's beliefs prove to be true. (*Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 854 [actual violation is not required under statute]; *Mokler*, at p. 139 [Evidence that plaintiff reasonably believed a violation occurred is sufficient, even if it is highly disputed whether the reported conduct actually constitutes a violation.].)

This distinction was recently highlighted in *Ross v. County of Riverside* (2019) 36 Cal.App.5th 580 (*Ross*).  In *Ross*, the plaintiff deputy district attorney reported to his supervisors the belief that one of the cases he was assigned to prosecute could not be proven beyond a reasonable doubt and that a continued prosecution would constitute malicious prosecution in violation of a criminal defendant's due process rights.  (*Id.* at pp. 584-585.)  The Court of Appeal concluded that such a disclosure was sufficient to support a whistleblower claim under section 1102.5, explaining that "[a]lthough [plaintiff] did not expressly state in his disclosures that he believed [his employer] was violating or not complying with a specific state or federal law, Labor Code section 1102.5, subdivision (b), does not require such an express statement.  It requires only that an employee disclose information and that the employee reasonably believe the information discloses unlawful activity."  (*Ross*, at pp. 592-593.)  As *Ross* makes clear, the focus of section 1102.5 is not whether the employee's disclosure identifies an actual

14

violation of statute, rule, or regulation, but the reasonableness of the employee's belief that the information disclosed reveals such a violation.

Thus, contrary to both parties' arguments on appeal, the question of whether the Perez mandates are the legal equivalent of a statute, rule, or regulation is not dispositive. Instead, the correct inquiry is whether, in making his disclosures, plaintiff reasonably believed he was disclosing a violation of a statute, rule, or regulation.[5]

On this point, the trial court's statement of reasons granting a new trial reflects a correct understanding of the law. After explaining why, in its view, it believed the Perez mandates did not constitute a statute, rule, or regulation, the trial court went on to state: "However, the provisions of Labor Code [section] 1102.5 provide protection from retaliation where the 'employee has *reasonable cause to believe* that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation,' such disclosure is protected." It then evaluated the evidence to determine whether plaintiff's communications constituted a disclosure under

---

[5] Clearly, this is a fact-intensive inquiry. Where an employee identifies an actual state or federal statute, rule, or regulation in making a disclosure, doing so may support a finding of reasonable belief. (*Ross*, *supra*, 36 Cal.App.5th at p. 592 [" 'To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion.' "].) However, nothing in section 1102.5 requires the employee to identify such in his disclosure or that the employee's belief ultimately be proven correct in order to be considered reasonable. In our view, reading such a requirement into section 1102.5 would be contrary to the very purpose of the statute, which is to encourage workplace whistle blowers to report unlawful acts without fearing retaliation. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77.) Depriving an employee of the statute's protection simply because the employee may not have the expertise to properly interpret a statute, rule, or regulation would discourage rather than encourage employees to disclose reasonable suspicions of illegal activity.

15

the statute and whether plaintiff could have had a reasonable belief he was disclosing illegal activity under the circumstances. Thus, the trial court did not apply an incorrect understanding of the law when evaluating the motion for new trial. We proceed to consider whether substantial evidence in the record supports the trial court's reasons for granting a new trial.

3. Substantial Evidence Supports a Finding That Plaintiff Failed To Show He Engaged in Protected Activity under Section 1102.5

Here, the trial court concluded that the evidence was insufficient to show a prima facie case plaintiff engaged in protected activity under section 1102.5. Under section 1102.6, this was part of plaintiff's initial burden to establish that the employer engaged in an "activity proscribed by section 1102.5" by a preponderance of the evidence. (§ 1102.6; *Lawson*, *supra*, 12 Cal.5th at p. 711.)

As we have already explained, in order to qualify for protection under section 1102.5, an employee must make a disclosure and hold a reasonable belief that the information discloses unlawful activity. (*Ross*, *supra*, 36 Cal.App.5th at p. 593.) In analyzing the evidence, the trial court concluded that (1) general comments regarding noncompliance with the Perez mandates did not constitute disclosures within the meaning of the statute; (2) discussions regarding personnel matters did not constitute disclosures under the statute; and (3) any additional disclosures could not reasonably have been understood by plaintiff to constitute illegal activity. Substantial evidence in the record supports the trial court's reasons.

16

First, the report of publicly known or already known information does not constitute a protected disclosure under section 1102.5. (*Mize-Kurzman*, *supra*, 202 Cal.App.4th at pp. 858-859.) This is because the statute protects " 'disclosure[s]' " and " '[t]he term "disclosure" means to reveal something that was hidden and not known.' " (*Ibid.*) Here, plaintiff testified that CDCR provided both written guidance and in-person training emphasizing that one of his primary duties as chief dentist was to bring CDCR's institutions into compliance with the Perez mandates. CDCR provided him increased incentives specifically because it was having difficulty retaining staff to comply with the Perez mandates. Consistent with this understanding, plaintiff reported noncompliant conditions at ISP to his supervisors and collaborated with them to try to implement steps to bring ISP into compliance during his employment. The trial court could reasonably rely on this testimony to conclude not only that CDCR already knew ISP needed to work on becoming compliant with the Perez mandates, but that plaintiff also knew general statements that ISP was noncompliant revealed nothing new to CDCR.[6] Thus, substantial evidence supports the trial court's conclusion that any such comments were not disclosures within the meaning of section 1102.5.

_____

[6] Given this evidence, we believe plaintiff's reliance on *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538 is misplaced. *Hager* declined to read a " 'first report' rule" into section 1102.5 and stands for the proposition that an employee may still be protected under the statute, even if another employee has already disclosed the same information to the employer and, therefore, the employer already knows of the information disclosed. (*Id.* at pp. 1548-1553.) However, the Court of Appeal in *Hager* did not disagree with the rule set forth in *Mize-Kurzman* but, instead, explained that "[t]he report of 'publicly known' information or 'already known' information is distinct from a rule in which only the first employee to report or disclose unlawful conduct is

*[footnote continued on next page]*

Second, California courts have made clear that discussions regarding personnel matters do not qualify for protection under section 1102.5. (*Patten*, *supra*, 134 Cal.App.4th at p. 1385 [Discussions regarding "*internal personnel matters* involving a supervisor and her employee . . . [¶] . . . [¶] . . . do not amount to whistleblowing as a matter of law."]; *Carter v. Escondido Union High School Dist.* (2007) 148 Cal.App.4th 922, 933-934 (*Carter*) [A disagreement between employees over proper protocol is a "routine 'internal personnel disclosure' " "not encompassed by section 1102.5."].) On appeal, plaintiff concedes that the majority of his discussions with Dr. Culton would fall into this category, but he argues that this is "irrelevant" because these discussions also included "intertwined" and "simultaneous" complaints about violations of the Perez mandates. However, as we have already explained, simply making general statements that ISP was not in compliance with the Perez mandates would not qualify as protected disclosures.

Finally, plaintiff argues that, in addition to general comments regarding ISP's noncompliance with the Perez mandates, his discussions "involved more than just what

_____

entitled to protection . . . ." (*Id.* at p. 1552.) This case does not present a situation in which multiple employees independently made disclosures regarding the same suspected illegal activity. Instead, it involves a factual scenario in which the employee already knows the employer is aware of the matter allegedly disclosed, which is not the type of activity normally considered to constitute whistleblowing. There would be no need to encourage disclosure by employees who actually know that the alleged wrongdoing has already been reported or is already generally known by the employer, who is investigating or acting on it. An employee would have no reason to believe he or she was acting as a whistleblower, or was in need of protection from retaliation, when the employee merely repeated information the employee knew had already been reported, or information the employee had learned from the employer itself.

18

was in the public realm" because he "informed Dr. Culton of specific knowledge within [plaintiff's] purview as the chief dentist at Ironwood about deficiencies in the dental care practice unique to that prison." However, every record citation in plaintiff's brief regarding the problems he purportedly revealed to Dr. Culton refers to a complaint that subordinate employees were resisting the implementation of internal policies regarding staff hours, patient scheduling, and tool counts. Generally, disclosure of an internal policy violation, standing alone, is an inadequate basis for a claim of whistleblower retaliation under section 1102.5. (*Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 822 [firefighter's reports "about perceived violations of the department's own policies" are not protected disclosures under the statute]; *Patten*, *supra*, 134 Cal.App.4th at p. 1385 [complaint regarding staffing policy "made in an exclusively internal administrative context" does not qualify as protected disclosure].)

Because disclosure of an internal policy violation is not generally the type of disclosure protected under section 1102.5, the question of whether plaintiff engaged in protected activity turns on whether plaintiff held a reasonable belief that such a disclosure could reveal a violation of a statute, rule, or regulation. Even where a plaintiff subjectively holds such a belief, there must be evidence "that would support a conclusion that his belief was 'reasonable.' " (*Carter*, *supra*, 148 Cal.App.4th at p. 933; see *Ross*, *supra*, 36 Cal.App.5th at p. 592 [employee must be able to point to a reasonable basis of support for his beliefs].) Here, plaintiff testified that as chief dentist, he was the individual tasked with developing and implementing policies to bring ISP into compliance with the Perez mandates, and that he was the individual who developed each

of the specific policies he claimed staff had violated.  This is substantial evidence on which the trial court could rely to conclude that plaintiff did not hold a reasonable belief that he was reporting illegal activity.  Clearly, where plaintiff used his own discretionary authority to develop the very internal policies at issue, it would be unreasonable for him to hold the belief that his own policies had the same force or effect as a statute, rule, or regulation.

Substantial evidence in the record supports the trial court's conclusion that plaintiff did not have "reasonable cause to believe that the information disclosed a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  Accordingly, the trial court did not abuse its discretion in granting a new trial for insufficiency of the evidence to show plaintiff engaged in protected activity under section 1102.5.

4.  <u>Substantial Evidence Supports a Finding That Plaintiff Failed To Show He Engaged in Protected Activity under Section 6310</u>

The trial court also concluded that there was insufficient evidence to show plaintiff engaged in protected activity under section 6310.  Under the *McDonnell Douglas* framework applicable to this claim, plaintiff also bore the burden to establish protected activity by a preponderance of the evidence.  (*Loggins*, *supra*, 151 Cal.App.4th at p. 1109.)  On appeal, plaintiff identifies only a single statement that would qualify as a protected disclosure under this statute.  Plaintiff argues that because such testimony exists in the record, the trial court necessarily erred in concluding the evidence was insufficient on this point.  We disagree.

20

A motion for new trial is not the equivalent of a motion for summary judgment.[7] The trial court is not bound to accept a fact simply because some admissible evidence in the record could support that fact. Instead, "[t]he powers of a trial court in ruling on a motion for new trial are plenary. The California Supreme Court has held that the trial court, in ruling on a motion for new trial, has the power 'to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact' [citation], that the court sits as 'an independent trier of fact' [citation] and that it must 'independently assess[] the evidence supporting the verdict' [citation]. The trial judge has 'to be satisfied that the evidence, as a whole, was sufficient to sustain the verdict; if he was not, it was not only the proper exercise of legal discretion, but his duty, to grant a new trial.' " (*Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503.) Thus, even where there is evidence to sustain the jury's finding, "the trial judge, who is, in effect, the thirteenth juror, is not bound by the finding of the jury if there is any substantial conflict in the evidence." (*Kawecki v. Maguire* (1950) 97 Cal.App.2d 80, 83-84.)

---

[7] We observe that many of the authorities discussing the *McDonnell Douglas* framework arise in the context of summary judgment proceedings. However, " ' "we must keep in mind that the *McDonnell Douglas* test was originally developed for use at trial [citation], not in summary judgment proceedings." ' " (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 309.) Thus, in order to defeat summary judgment, a plaintiff need only produce evidence from which a trier of fact could conclude a prima facie case exists. (*Ibid.*) However, at trial, the burden is reversed and the plaintiff also bears the burden of persuasion regarding the existence of a prima facie case. (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 150.)

Here, plaintiff's testimony was far from consistent with respect to a purported complaint related to employee health and safety. During direct examination, plaintiff's initial description of his conversation with Dr. Culton contained no mention of any such complaint. Plaintiff made the single reference to a purported health and safety complaint upon which he now relies during cross-examination. However, plaintiff did not describe when this conversation occurred and also implied his comments were actually made in the context of lost tools. On redirect examination, plaintiff again made no mention of a health and safety complaint and, instead, agreed that "all of the complaints that [he] made to Dr. Culton related to limitations on access to care." For his part, Dr. Culton testified that he would have remembered if an employee made a whistleblower complaint directly to him, but he did not recall plaintiff ever making such a complaint.

Thus, the evidence on this point was in conflict. Plaintiff's brief answer to a single question during cross-examination is the only evidence claimed to support his prima facie case under section 6310. To the extent the trial court found this testimony lacked credibility or that Dr. Culton's testimony was entitled to more weight, the trial court could reasonably conclude that the evidence was insufficient to show plaintiff engaged in protected activity under section 6310.

5. Substantial Evidence Supports a Finding That Plaintiff Failed To Show a Causal Link

The trial court also granted a new trial on both causes of action because of the insufficiency of the evidence to show a causal link between the alleged protected activity and adverse employment action. While section 1102.6 uses the phrase "contributing

22

factor" and the traditional *McDonnell Douglas* framework uses the phrase "causal link," under both tests, the plaintiff bears an initial burden to show by a preponderance of the evidence that some causal connection exists between the alleged protected activity and the alleged adverse employment action.[8] (§ 1102.6; *Loggins*, *supra*, 151 Cal.App.4th at p. 1109.) Substantial evidence supports the trial court's conclusion on this issue.

Generally, a plaintiff can establish a causal link through circumstantial evidence of " 'the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69-70 (*Morgan*); see *Hawkins v. City of Los Angeles* (2019) 40 Cal.App.5th 384, 394 (*Hawkins*).) Here it is undisputed that plaintiff's purported protected disclosures occurred in a January 26, 2009 conversation with Dr. Culton, and that CDCR sent plaintiff notice of its decision not to hire him on February 3, 2009. As a result, plaintiff argues the trial court could not have concluded there was insufficient evidence of a causal link.

However, as we have already explained, in the context of a trial, plaintiff bore not only the burden of proof, but also the burden of persuasion to convince the trier of fact that it was more likely than not that each element of a prima facie case exists. (*Harris v.*

---

[8] As explained by our Supreme Court, the tests differ to the extent that the burden shifting under *McDonnell Douglas* requires the plaintiff to provide evidence of pretext in rebuttal to the employer's presentation of a legitimate, nonretaliatory reason for its decisions. (*Lawson*, *supra*, 12 Cal.5th at p. 714.) That distinction is not relevant here because the trial court never analyzed the sufficiency of any rebuttal evidence regarding pretext but instead concluded that plaintiff's initial prima facia showing was insufficient.

23

*City of Santa Monica* (2013) 56 Cal.4th 203, 214; *Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1749 [A plaintiff's burden is to prove a prima facie case by a preponderance of the evidence.]; (*Lawson*, *supra*, 12 Cal.5th at p. 718 [Section 1102.6 "places the burden on the plaintiff to establish by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor."].) In considering the sufficiency of the evidence to meet this burden, the trial court "was permitted to assess the credibility of witnesses, weigh the evidence, and draw inferences from the evidence different from those the jury may have drawn." (*Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 337 (*Johnson & Johnson*).)

Here, Dr. Culton testified that he did not recall plaintiff ever making a whistleblowing complaint. Dr. Culton further testified that his decision not to sign plaintiff's hiring packet was motivated by the fact that he did not personally participate in the evaluation and selection process; he communicated with some of the individuals involved, but they declined to "be involved" or otherwise endorse plaintiff for the position; and he had been given information that the position would soon be eliminated regardless. The trial court expressly found this testimony credible. Thus, substantial evidence supports the trial court's conclusion that Dr. Culton was not aware plaintiff had engaged in protected activity and was not motivated by any such knowledge in declining to sign plaintiff's hiring packet.

Plaintiff's argument that Dr. Culton's testimony lacked credibility, was inconsistent or otherwise impeached is not grounds for reversal. "Conflicting evidence— far from supporting [a] decision to reinstate the jury's verdict—actually places the new

24

trial order beyond review so long as the conflict relates to the trial court's reasons for granting a new trial." (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 416.) The trial court's order granting a new trial for insufficiency of the evidence will not be disturbed on appeal merely because a different trier of fact could have reached a different conclusion with respect to a witness's credibility or drawn conflicting inferences from the testimony.

6. <u>Substantial Evidence Supports a Finding That CDCR Presented a Legitimate, Nonretaliatory Reason for Its Decision Not To Hire Plaintiff</u>

Finally, the trial court concluded that, even if plaintiff had met his initial burden to show a prima facie case of retaliation, CDCR met its corresponding burden to show a legitimate, nonretaliatory reason for its decision not to hire plaintiff. Both section 1102.6 and the *McDonnell Douglas* framework recognize that an employer may negate liability by establishing a nonretaliatory reason for its decision. (§ 1102.6; *Yanowitz v. L'Oreal USA*, *Inc.* (2005) 36 Cal.4th 1028, 1042 [Under the *McDonnell Douglas* framework, "[i]f the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation."].) However, section 1102.6 imposes a higher standard of proof on an employer than the *McDonnell Douglas* framework, by requiring that an employer "demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons" in the context of retaliation claims brought under section 1102.5. (§ 1102.6.)

On appeal, plaintiff argues that CDCR's evidence was insufficient to meet the higher clear and convincing standard imposed by section 1102.6. We disagree. "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 995-996.) We believe substantial evidence in this case supports the trial court's finding, even under this heightened standard.

Here, the evidence was undisputed that CDCR formally imposed a hiring freeze a mere two weeks after plaintiff's notice of rejection for the permanent chief dentist position, and that CDCR later eliminated the position in its entirety as a result of budget constraints. This is sufficient evidence upon which a trier of fact could conclude that it was highly probable CDCR's nonretaliatory reason for not hiring plaintiff into a permanent position was true.

The only argument offered by plaintiff on appeal is that the trial court's reasoning is a "logical fallacy" because the hiring freeze was not officially implemented until after plaintiff was rejected for the permanent position. However, Dr. Culton testified that at the time he declined to sign plaintiff's hiring packet, he had already been made aware that a hiring freeze was forthcoming and that as a result, he believed the chief dentist position at ISP was essentially unfillable. The trial court expressly found Dr. Culton's testimony to be credible and, even when the clear and convincing standard is considered on review, an appellate court does not substitute its views for that of the trier of fact on issues of

credibility. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 996 [the reviewing court continues to "give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence"].)

The only question for this court to resolve is whether the evidence, if found credible, was sufficient to permit the trial court to find that it was highly probable that CDCR's proffered nonretaliatory reason was true. The undisputed evidence that CDCR did, in fact, implement a hiring freeze shortly after declining to hire plaintiff and Dr. Culton's testimony that he was aware of the impending hiring freeze at the time he declined to sign plaintiff's hiring packet is substantial evidence upon which the trial court could reach this conclusion. Given this conclusion, the same evidence was also necessarily sufficient to support the trial court's finding with respect to plaintiff's claim under section 6310, subdivision (b), which is governed by the lower evidentiary standard articulated in *McDonall Douglas*.

7.  We Need Not Resolve Other Grounds Contested by Plaintiff on Appeal

Plaintiff also asserts that the trial court abused its discretion in granting a new trial because it erroneously concluded that his section 6310 complaint was barred for failing to identify the matter in a prior administrative claim,[9] and that the jury's award of damages

_____

[9] We observe that plaintiff's characterization of the trial court's statement on this point does not appear accurate. In full, the trial court stated: "Plaintiff's opposition asserts that in addition to tool counts he made a health and safety violation complaint to Dr. Culton about lack of space for the staff to take a break or eat their lunch, forcing them to eat in the sterilization area. However, the record reflects that this alleged complaint

*[footnote continued on next page]*

was excessive. However, because we affirm the trial court's order granting a new trial on the ground of insufficiency of the evidence to support the verdict, we need not discuss these alternative grounds. (Code Civ. Proc., § 657 ["[o]n appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion"]; *Henderson v. Drake* (1953) 118 Cal.App.2d 777, 790 [the appellate court must affirm the order granting the new trial if any one ground upon which it might have been granted is supported by the record]; *Malkasian v. Irwin* (1964) 61 Cal.2d 738, 745 [order granting new trial may be affirmed on any of the grounds presented in motion, regardless of whether alternative grounds presented have merit].)

## C. *The Trial Court Correctly Denied CDCR's Motion for JNOV*

CDCR has separately appealed from the order denying its motion for JNOV, arguing that the trial court "should have gone further" than merely granting a new trial because the evidence was incapable of supporting the jury's verdict. We disagree.

---

was not contained in Plaintiff's administrative claim and therefore cannot form the basis for his claim under Labor Code [section] 6310. Therefore, any jury determination that relied solely or in part on this alleged violation would be improper." Thus, in context, the trial court was merely responding to an argument made by plaintiff and expressing the view that, even if it had been convinced by plaintiff's argument, such a hypothetical scenario might have resulted in the grant of new trial based upon an error of law. Contrary to plaintiff's argument on appeal, the trial court was permitted to comment on this matter, even if CDCR did not make such an argument in its supporting memorandum, as error of law was identified as a ground for new trial in CDCR's notice. (See *McCarty v. Department of Transportation* (2008) 164 Cal.App.4th 955, 983 [trial court may grant motion for new trial on error in law, even if "it happened to be a *different* error in law" than that identified by the moving party].)

28

1.  General Legal Principles and Standard of Review

"An appeal may be taken from an order denying a motion for [judgment notwithstanding the verdict] even where the trial court has granted, or denied, a new trial motion." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 324.)  " ' " 'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. . . .  [T]he standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.' " [Citation.]' . . .  ' "When an appellate court reviews an order granting JNOV, it will ' " 'resolve any conflict in the evidence and draw all reasonable inferences therefrom in favor of the jury's verdict.' " ' " ' " (*Johnson & Johnson*, *supra*, 37 Cal.App.5th at pp. 313-314.)

We emphasize that this is a different standard of review than that employed to review the sufficiency of the evidence for purposes of granting a motion for new trial. (*Johnson & Johnson*, *supra*, 37 Cal.App.5th at pp. 336-337.)  Thus, where the evidence is in conflict, the same record may be sufficient to conclude that the jury's verdict is supported by substantial evidence for purposes of affirming the trial court's denial of a motion for JNOV and also sufficient to support a contrary verdict for purposes of affirming the trial court's order granting a new trial.  (*Ibid.*)

2.  *Manavian* Is Not Controlling

Initially, we address CDCR's argument that plaintiff's communications cannot be considered protected whistleblowing as a matter of law under *Manavian v. Department of*

*Justice* (2018) 28 Cal.App.5th 1127 (*Manavian*). In *Manavian*, the plaintiff was a high level government administrative employee who asserted he engaged in whistleblower activity by sharing concerns over the legality of proposed policies regarding intelligence collection and information sharing by state and federal law enforcement organizations. (*Id.* at p. 1143.) The Court of Appeal concluded that the plaintiff's actions could not constitute protected activity under section 1102.5 because the plaintiff's "discussions of his concerns were within his job duties as an upper-level administrator and were not protected disclosures." (*Id.* at p. 1145.) However, we find the reasoning of *Manavian* unpersuasive.

In reaching its conclusion, the Court of Appeal in *Manavian* looked to "federal cases interpreting the federal Whistleblower Protection Act (WPA) of 1989 to guide [its] interpretation of the California whistleblower statutes." (*Manavian*, *supra*, 28 Cal.App.5th at p. 1144.) While we find no fault in its interpretation of federal authorities, we respectfully question whether this was the appropriate analytical framework to employ in order to interpret the scope of protected activity under section 1102.5.

Unlike the WPA, section 1102.5, subdivision (b), includes an express provision that states an employee may be entitled to protection under the statute "regardless of whether disclosing the information is part of the employee's job duties."[10] Thus, we

---

[10] The Court of Appeal in *Manavian* appears to have acknowledged this language in the statute but gave it no consideration in conducting its analysis. (*Manavian*, *supra*, 28 Cal.App.5th at p. 1141, fn. 5.)

believe the issue is more appropriately resolved by employing the traditional rules of statutory interpretation rather than looking to federal cases interpreting a parallel, but different statutory scheme. Under these rules, " ' "[t]he statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, 'there is no need for judicial construction and a court may not indulge in it.' . . . '[I]f there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' " ' " (*MCI Communications Services*, *Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 643.) Here, the phrase "regardless of whether disclosing the information is part of the employee's job duties" is clear and unambiguous. At the very least, the language precludes the interpretation urged by CDCR that an employee cannot be considered to have engaged in protected activity if the employee's disclosures were part of her regular job duties.

We acknowledge that the phrase, "regardless of whether disclosing the information is part of the employee's job duties," was added to section 1102.5, subdivision (b), after the events subject of this litigation.[11] However, even before this language was added, the Courts of Appeal had already interpreted the former version of section 1102.5, subdivision (b) (Stats. 2003, ch. 484, § 2), to include such protection. (See *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1312-1313 [excluding employee from section 1102.5's protection because she was "simply doing her job" "applies the concept of whistleblowing too narrowly"]; *Mize-Kurzman*, *supra*,

---

[11] The phrase was added by amendment in 2013, becoming effective January 1, 2014. (Stats. 2013, ch. 577, § 5.)

31

202 Cal.App.4th at p. 858 [the trial court "erred in instructing the jury that information passed along to a supervisor in the normal course of duties was *not* a protected disclosure" because "it cannot categorically be stated that a report to a supervisor in the normal course of duties is not a protected disclosure"];[12] *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 469 [reversing summary judgment because "[a]n employee's report of illegal activity can, in any event, constitute protected conduct under Labor Code section 1102.5, subdivision (b) even if she ' "was simply doing her job" ' in making the report"].)

Because the Courts of Appeal had long recognized that section 1102.5, subdivision (b), applied even in situations in which an employee's disclosure might have been part of his or her regular job duties, the addition of such language to the statute did nothing to change the scope of activity already recognized as protected under existing law. Thus, the phrase "regardless of whether disclosing the information is part of the employee's job duties" must necessarily be viewed as a clarification of existing law, which applies even to acts that predate its enactment. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 252 [where a legislative enactment does "not effect any

---

**12** Curiously, *Manavian* cites to portions of *Mize-Kurzman* in support of its reasoning but does not refer to the portion of *Mize-Kurzman* that actually considered the same issue presented in *Manavian*. (*Manavian*, *supra*, 28 Cal.App.5th at p. 1145.) Instead, *Manavian*, refers to a portion of *Mize-Kurzman* that discusses whether it was appropriate to instruct a jury that "efforts to determine if a practice violates the law are not protected disclosures." (*Manavian*, at p. 1145; see *Mize-Kurzman*, *supra*, 202 Cal.App.4th at pp. 849, 859-860.) However, *Mize-Kurzman* separately discussed the propriety of an instruction that "[i]nformation passed along to a supervisor in the normal course of duties is not a protected disclosure" and reached a conclusion contrary to that reached in *Manavian*. (*Mize-Kurzman*, at pp. 849, 856-858.)

change in the law, but simply clarifie[s] and confirm[s] the state of the law" it does "not change the legal effect of past actions"]; see *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922-923 [" ' " 'An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act . . . .' " ' "].)

Thus, we disagree with CDCR that it is entitled to JNOV simply because reporting noncompliance with Perez mandates was within plaintiff's regular job duties. The clear words of the statute, as clarified by the Legislature, preclude such an interpretation. To the extent *Manavian* can be relied upon to support a different conclusion, we are unpersuaded by its reasoning.

3. Substantial Evidence in the Record Supports the Jury's Verdict

Other than its assertion that *Manavian* entitles it to judgment, as a matter of law, on plaintiff's section 1102.5 claim, CDCR contends the trial court should have granted its motion for JNOV "for the same reasons CDCR was properly granted a new trial." However, as we have already explained, the standard of review on a motion for JNOV differs substantially from the one used to evaluate the propriety of the trial court's grant of a new trial. On a motion for JNOV, we review the jury's verdict and determine whether it is supported by substantial evidence, even if conflicting evidence would support a contrary finding by the trial court in granting a new trial.

Here, substantial evidence in the record permits a trier of fact to conclude that plaintiff engaged in protected activity under both section 1102.5 and section 6310. Plaintiff testified that he subjectively believed that the failure of ISP's dental staff to

33

properly follow policies amounted to a violation of rights guaranteed under the Perez mandates and the Eighth Amendment of the United States Constitution. Likewise, plaintiff testified that he reported what he believed to be a violation of workplace occupational health and safety rules to Dr. Culton. While the trial court was not required to find this testimony credible in ruling on the motion for new trial, such evidence could support a contrary finding that plaintiff engaged in protected activity.

Further, it was undisputed that plaintiff was given formal notice of CDCR's decision not to hire him for the permanent chief dentist position shortly after his meeting with Dr. Culton, in which plaintiff purportedly made whistleblower complaints. This was substantial evidence upon which a jury could rely to infer a causal link between the alleged protected activity and alleged retaliatory action (*Morgan*, *supra*, 88 Cal.App.4th at pp. 69-70; *Hawkins*, *supra*, 40 Cal.App.5th at p. 394), even if the trial court was not required to draw such an inference in ruling on the motion for new trial.

Finally, while we have concluded that the testimony of Dr. Culton would support a finding that CDCR had a legitimate, nonretaliatory reason for declining to hire plaintiff, a jury was not required to find Dr. Culton credible. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632 [" ' "provided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted" ' "].) Since CDCR bore the burden of proof with respect to the existence of a legitimate, nonretaliatory reason for the alleged adverse employment action under both section 1102.6 or the *McDonnell Douglas* framework, to the extent a jury found Dr. Culton's testimony lacked credibility, it was entitled to find in favor of plaintiff on this issue.

34

In this case, conflicting evidence was presented with respect to each of the reasons offered by the trial court for its conclusion that insufficient evidence supported the jury's verdict. While the presence of conflicting evidence permits the trial court to assess the relative credibility of a witness and draw its own reasonable inferences in determining the sufficiency of the evidence to grant a new trial, it equally precludes a conclusion that CDCR was entitled to judgment as a matter of law. We find no error in the trial court's denial of CDCR's motion for JNOV and affirm that order.

## IV.  DISPOSITION

The orders are affirmed. Each party to bear its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS_____
J.

We concur:

RAMIREZ_____
P. J.

RAPHAEL_____
J.

35